UNITED STATES, Appellee

v.

STEPHEN C. STRIBLING, Chief Warrant Officer,
U. S. Army, ·Appellant

5 USCMA 531, 18 CMR 155

LT COL Joseph L. Chalk, U. S. Army, LT COL Edward Duvall, U. S. Army, and 1ST LT Anthony T. Dealy, U. S. Army, for Appellant.

LT COL Thomas J. Newton, U. S. Army, and 1ST LT Elliott H. Eisman, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

A general court-martial sitting in Stuttgart, Germany, on June 17, 1954, convicted the accused, Stribling, of two acts of embezzlement, together with one instance of failure to account for funds, in violation of Articles 121 and 134, respectively, Uniform Code of Military Justice, 50 USC §§ 715, 728. His sentence to dishonorable discharge, total forfeitures and confinement at hard labor for five years, as well as all findings, were approved by the convening authority and affirmed by a board of review in the office of the Army's Judge Advocate General. Although the issue was not raised at any stage of the proceedings below, we granted Stribling's petition for review to determine whether the evidence was sufficient to establish for all purposes the two separate embezzlements alleged on the charge sheet.

### II

On February 2, 1954, the accused—under orders appointing him a Class "A" Agent—received a fund totalling $3,000.00 in deutsch marks for the purpose of sale to troops in return for military payment certificates. As time passed, there was cause to believe that a substantial deficiency had come about —for within two months of his appointment as custodian, the accused, during a conversation with a friend, adverted to a shortage of $1,500.00. Judgment day, April 22, 1954, arrived in the nature of an audit conducted by the company commander, after which Stribling acknowledged orally a shortage of some $2,400.00—a not unreasonable concession from one unable to produce four-fifths of the sum entrusted to him.

Thereafter, he executed a voluntary extrajudicial statement confessing to a withdrawal of $200.00 from the fund for his personal use, and to the appropriation of an additional $200.00 handed him by a Lieutenant Simpson in repayment for cash "borrowed" therefrom by the latter. According to his own account, the accused had contracted numerous obligations in pursuit of two favorite recreational activities—gambling and attentions to local women.

At the trial, the Government chose to divide the missing amount between two specifications—one alleging a larceny of $200.00, the other a theft of $2,200.-00. Whether the establishment of a single shortage is sufficient to sustain findings of guilt under both counts is the question before us now.

### III

Appellate defense counsel urge that evidence sufficient to support the allegation of larceny of $200.00 is wholly wanting. Where there are several takings pursuant to a single design—the argument runs—but a single larceny results. Therefore, in the absence of a showing of a separate intention to steal $200.00, an undivided purpose exists, characterized by several takings—and the Government may not carve out of the whole a separate larceny touching this amount.

In support of this position the defense relies heavily on People v. Cox, 286 NY 137, 36 NE2d 84. There, the defendant seems to have been engaged for several years in the larceny of subway fares—usually in amounts of from twenty-five to thirty dollars—deposited by passengers in station turnstiles. He

was charged in a single count with the theft of approximately $1,500.00 allegedly taken over a period of eleven months. In affirming the conviction, the New York Court of Appeals followed what it termed settled law, and held "that where property is stolen from the same owner and from the same place in a series of acts, those acts constitute a single larceny regardless of the time elapsing between them, if the successive takings be pursuant to a single intent and design and in execution of a common fraudulent scheme." Because the fact situation before us here is similar—the defense concludes—this Court is bound to apply a rule requiring aggregation where successive takings occur which are consistent with a single intent.

Sound though it may be for certain purposes, we are unimpressed by the argument in this setting. The Cox case amounts to no more, we believe, than a culmination of previous judicial attempts to assist the prosecution in establishing the grand larceny guilt of offenders who take petty amounts over periods of time. That the rule would operate to the accused's benefit here constitutes no sufficient reason for its adoption—for a less happy result to one in his general position may be expected in many other cases. Moreover, we decline to accept the position that a single intent or design characterized by multiple takings must necessarily result in no more than one larceny.

Of course, when a theft of several articles is committed at substantially the same time and place, Manual language compels us to hold that but a single crime has been committed. Manual for Courts-Martial, United States, 1951, paragraph 200a, page 361. However, we do not find in the language of this passage support for the defense's contention. Perhaps the present accused was indeed prompted by a unitary felonious purpose unbroken by recurrences of honesty. Nonetheless, the fact is insignificant here. ". . . the test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent." Morgan v. De-

vine, 237 US 632, 59 L ed 1153, 35 S Ct 712. See United States v. McVey, 4 USCMA 167, 15 CMR 167.

Put in another fashion, "although a continuous transaction may be involved —and one animated by but a single criminal intent—" separate acts may be proved resulting in convictions under more than one specification. United States v. Beene, 4 USCMA 177, 15 CMR 177. Assuming that which we shall decide *infra*, that is, that the Government sufficiently established a separate taking of $200.00 from the fund, we find no injustice in applying the accused's continuing intent—and the defense insists that there was but one—to the findings of guilt under both specifications. If the accused had been convicted of burglary with a design to commit larceny, and also with the larceny which formed the object of the burglary— both crimes allegedly committed pursuant to a common scheme—he certainly could not effectively complain. Morgan v. Devine, supra. We see no valid reason—and none has been advanced— for a different result in the present situation. Accordingly, we reject as distinctly inharmonious the defense's orchestration of the "one crime, one punishment" theme.

### IV

An unexplained shortage of $2,400.00 from the funds with which the accused had been entrusted would █ —in the absence of any sort of confession—suffice to sustain a conviction of larceny in that amount. Obviously, then, it would serve to supply the corpus delicti for a confession to a theft of that sum. The difficulty here—if one there is—arises from the circumstance that the accused was charged with, and punished for two larcenies in the amounts of $200.00 and $2,200.00, respectively.

Germane to the present problem is the principle laid down by us in United States v. Florence, 1 USCMA 620, 5 CMR 48. There an accused was convicted under a single specification alleging a stealing of currency from the personal effects of two deceased soldiers, which property it was his duty to inventory. The aggregate value of the

amounts involved exceeded $50.00—and the Government argued that punishment not to exceed confinement at hard labor for five years was authorized. We disagreed—because we concluded that the evidence reflected in the record of trial did not negate effectively the possibility that the currency was taken at different times, and with other than a continuous intent. In this latter event, of course, several larcenies could have resulted, each involving less than $50.00—thus producing an overall maximum penalty of *less* than five years' confinement. Under the rationale of that case, it is clear that, for punitive purposes, and in the absence of proof establishing a contrary state of affairs, the circumstances surrounding such a crime as the present one must be construed in the manner most favorable to the accused.

Thus, the issue here is whether the Government has presented proof sufficient to avoid the effect of the Florence case. Its counsel rely on the reception in evidence of the accused's confession, which recited the commission of one larceny of $200.00 and implied the perpetration of another in like amount. Appellate defense counsel reply that the confession must be corroborated by extrinsic evidence indicating the probability that the money was purloined by the accused in the manner stated by him, rather than in a single taking. It is argued that under this test the prosecution's evidence would fail—for the mere shortage of $2,400.00 could reflect as well a single defalcation as a series of embezzlements.

Strikingly similar to the problem before us here is another on which the Supreme Court has recently ruled. In many tax evasion prosecutions "the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an 'opening net worth' or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income." Holland v. United States, 348 US 121, 99 L ed —, 75 S Ct 127.

Because the pertinent revenue statute defines the offense of tax evasion in terms of individual years, the Government experiences frequent difficulty in relating an increase in net worth to a specific prosecution year. Indeed, in order to ascertain the amount of unreported income during a single year, its lawyers must often rely on the statements of the taxpayer made to revenue agents in the course of investigation. In United States v. Calderon, 348 US 160, 99 L ed —, 75 S Ct 186, the respondent was convicted and sentenced separately under four counts alleging tax evasion. The Government relied on a net worth computation for the years 1946 through 1949, and established by independent evidence a four-year deficiency of $30,000.00 in unreported income. An integral part of its proof took the form of respondent's own admissions. In holding that proof of a deficiency over a four-year period constituted sufficient corroboration of an admission relating to only one year, the Supreme Court observed:

". . . It might be argued that independent evidence showing a $30,000 deficiency is not enough—that there must be evidence that this sum resulted in a deficiency for *each* of the years here in issue. There is no merit in this contention. In the first place, this evidence is merely *corroborating* respondent's cash-on-hand admissions and need not comply with the niceties of the annual accounting concept. *While the evidence as a whole must show a deficiency for each of the prosecution years, the corroborative evidence suffices if it shows a substantial deficiency for the overall prosecution period. . . .* It provides substantial evidence that the crime or crimes of tax evasion have

534

been committed; the corroboration rule requires no more." [Emphasis partially supplied.]

It seems that the Calderon case offers a complete answer to the question confronting us here. There the overall deficiency during a four-year period was considered a sufficient predicate for the use of the defendant's own admissions, which served to convict him under four counts—covering *each* of the four years. He could then have been sentenced consecutively for four separate tax evasions, rather than for one alone. See also Smith v. United States, 348 US 147, 99 L ed —, 75 S Ct 194. Here we are confronted with a deficiency of $2,400.00 which arose over a period of several months. The definitely established existence of that shortage—as the Supreme Court said—"provides substantial evidence that the crime or crimes of . . . [larceny] have been committed; the corroboration rule requires no more." Thus the imposition in the case at bar of penalties based on two specifications of larceny, each in excess of $50.00, was clearly authorized by the most recent authoritative precedent.

Of course, the sum of the accused's admitted withholdings came to much less than the $2,400.00, which the court-martial found to have been stolen. However, this is immaterial, for—as has been pointed out earlier in the present discussion—the evidence aliunde his confession is ample to support a finding that he embezzled a total of $2,400.00. And the confession—superimposed on that extrinsic evidence—fully justified the law officer's advice to the court that the accused was subject to a maximum sentence of confinement for ten years by reason of his two larcenies. In point of fact, of course, the accused received only a five year sentence under this instruction.

Also immaterial for the present purpose is any difference which may exist between the rule of corroboration customarily applied in the Federal civilian courts, and the apparently more demanding standard required by the language of the current manual for Courts-Martial. Under either rule, there was sufficient evidence that the accused illegally abstracted $2,400.00 from the funds with which he was entrusted. Only on the basis of this premise have we sought to apply the Supreme Court's precedents relating to the allocation of an aggregate corpus delicti to separate specifications.

V

It follows that the decision of the board of review must be affirmed.

Chief Judge QUINN and Judge LATIMER concur.