UNITED STATES, Appellee

v

JASON W. HALL, Private E–2, U. S. Army, Appellant

6 USCMA 562, 20 CMR 278

No. 7117

Decided December 16, 1955

*First Lieutenant Stephen D. Potts* argued the cause for Appellant, Accused. With him on the brief was *Captain Albert C. Malone, Jr.*

*First Lieutenant Robert L. Taylor* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant A. Kenneth Pye* and *First Lieutenant William K. Davenport.*

## Opinion of the Court

PAUL W. BROSMAN, Judge:

An Army general court-martial found the appellant here guilty under two specifications alleging larceny—in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. Both were concerned with the theft of clothing said to have been taken on the same date. Hall's sentence to dishonorable discharge, total forfeitures and confinement at hard labor for one year—together with all findings—were approved by the convening authority and affirmed by a board of review. We granted review to determine the single question of whether the evidence is sufficient to establish that the offenses charged were in fact separate.

II

The accused and another soldier named Sossaman were members of the third platoon of their unit, which was quartered at one end of the third floor of a barracks building at Fort Monmouth, New Jersey. On the day in question at approximately nine o'clock in the morning, the pair—prompted apparently by a desire to replace missing clothing of their own—decided to appropriate certain wearing apparel principally from personnel of the fifth platoon. This latter element was housed in the farther end of the long barracks building occupied by both and directly opposite the billet of the third. A hallway—some fifty yards in length —separated the domains of the two platoons, each of which was partially enclosed by a tier of lockers.

Having decided on this course of action, the accused opened several of these lockers located near the center of the fifth platoon area, and ultimately carried a khaki shirt and a similar pair of trousers back to that of his own group. Sossaman remained with Hall in the third platoon section for approximately thirty minutes after the theft. Subsequently, during the afternoon of

**563**

the same day, the latter exhibited to Sossaman a gray flannel suit identical to the one described in the first specification as the property of one Conte—a fellow member of the appellant's own platoon. At no time during the morning period, while the two were together, was Sossaman aware that the accused had removed any item from third platoon lockers.

A fully corroborated extrajudicial confession—as to the voluntariness of which no sort of objection was raised by the defense—established beyond doubt the accused's guilt of the theft of the pieces of clothing described on the charge sheet. In the course of his statement, the accused admitted that he had taken a set of khakis from the locker of a private named Brown, located in the fifth platoon area, and that —following a similar scheme—he had appropriated a suit belonging to a member of his own element. However, it is now said that the statement affords some substantial indication that the peculations were not separate acts for the present purpose, but were committed at the same time and place.

### III

Appellate defense counsel focus their attack on the Government's election to allege two instances of larceny at the trial, rather than to aggregate the items of clothing stolen into a single transaction. Thus, we are told that, since the two takings occurred at substantially the same time and place, there results but a single theft, although the articles appropriated belonged to different persons—and a Manual provision to this effect is cited as controlling. Prejudice is apparent, the argument runs, because of the fact that an aggregation within the confines of a single specification could have produced legally no more than a maximum confinement of six months—as compared with the imposed sentence to confinement for one year under the separate allegations used. See Manual for Courts-Martial, United States, 1951, paragraph 127c, page 223, Table of Maximum Punishments.

It may not be amiss at this juncture to set down, in highly abbreviated fashion, some of our thinking on the general problem before us. If one were to enter a room and to take, with the necessary intent and at one and the same time, six articles all belonging to the occupant, in at least one—and we believe an ultimate—sense, it may properly be said that six larcenies resulted. Certainly, the accused stole six items— that is, there was a larcenous taking of each.

However, for a very long time, and in both civilian and military law, the punishment imposable for larceny has borne a direct relation to the value of the property taken and carried away. Thus—in the absence of some sort of limiting rule—punitive action might well be caused to depend on nothing more substantial than the whim of the prosecutor as expressed in his pleadings. For this reason, rules of thumb related to larceny allegations have been set up in various legal sources—one of which is the "same time and place" precept invoked by the defense here. To us, however, these injunctions are essentially practical in character, and are distinctly subsidiary to first principles operative in the area.

Therefore, all that an accused person —concededly guilty for the purposes of the present disquisition—is entitled to ask, and all that the several mentioned pleading reagents do, or should, seek to accord him, is the right to be *punished* on the basis of reasonably discrete offenses. To put the matter otherwise— and this time from the point of view of the Government's pleader—it need only be demanded that the prosecutor, in his allegations of larceny, recognize fair and distinct interruptions in the current of the accused's criminality, and acknowledge them alone, resolving doubts, of course, in favor of the latter's penal interest. And we will undertake to see to it that these divisions, the offense "breaks," utilized by him, *are* defensible, and that doubts are thus appropriately resolved—as, indeed we have already indicated in many of the cases cited in later paragraphs of this opinion. But if the separative allegations of the Government—or its actions in

refusing to separate—are in fact fair, tenable and reasonably uniform, we shall not at all require a micrometer caliper for use in the disposition of cases of this ilk. Of course, the present problem is not found in larceny pleading alone—but is to be recognized as well in a wide variety of other legal situations. Bell v United States, 349 US 81, 75 S Ct 620.

## IV

We recognize, of course, that when a theft of several articles is committed at substantially the same time and place, Manual language provides that we hold that but a single crime has been committed, although different owners may be involved. Manual, supra, paragraph 200a, page 361. Further, we are equally aware of the rule that, where the Government elects to separate the value of property allegedly taken into more than one specification, its lawyers must negate the likelihood that only one offense occurred. See United States v Taylor, 6 USCMA 289, 20 CMR 5; United States v Florence, 1 USCMA 620, 5 CMR 48. Our problem then is to determine whether—as claimed by the defense—the accused's confession compels the conclusion that the Government failed to establish the necessary separateness.

We are quite willing to accept the notion that, in determining whether takings are simultaneous, an accused's own recitation of the facts is entitled to great weight. Indeed, in an earlier case we have expressly held that a voluntary confession was sufficient to establish the fact that two items of foodstuff, alleged to have been stolen on the same date, were purloined from different buildings—with the result that the court-martial which tried the accused was permitted to impose a penalty predicated on the basis of two larcenies rather than one. United States v Arrington, 5 USCMA 557, 18 CMR 181. Certainly, the present appellant is entitled to the application of the Arrington rationale in a situation in which the confession may tend to benefit him in this regard. However, we are sure that the prosecution's total evidence,

and permissible inferences therefrom, are quite sufficient to establish that each offense was distinct from the other.

The accused's confession does no more than assert that, on the date alleged, he proceeded to the fifth platoon area, removed a khaki uniform from a wall locker belonging to Brown, and thereafter went to Conte's locker, where he purloined the flannel suit in question. Against this summary recollection is balanced the testimony of his associate, Sossaman, to the effect that he was in the company of the accused during the morning on which the pilferage occurred, and had kept the accused continuously under observation for approximately thirty minutes after the khakis were misappropriated. At no time during this period did Sossaman observe the accused approach Conte's locker, although Hall, on a prior occasion, had stated that he proposed to acquire the particular suit taken. It was not until much later in the day that the accused displayed to Sossaman the apparel he had stolen from Conte.

Appellate defense counsel nevertheless insist that, as the accused's statement implied, the theft of the suit must have occurred at substantially the same time as that of the khaki shirt and trousers—this because of the fact that Sossaman admittedly left the accused "for a minute" to visit the washroom during the half-hour period immediately following the taking of the latter clothing. Unfortunately for the defense position in this particular, however, the accused asserted in his confession that he had opened Conte's locker with a coat hanger—a task of no inconsiderable proportions in view of the fact that its owner had personally padlocked this storage chest. It is extremely doubtful that Hall could have accomplished the chore involved during Sossaman's momentary absence and without the latter's knowledge. Accordingly, we cannot say that the evidence is not sufficient to establish that the two takings did not occur at substantially the same time.

Although we are to assume, *arguendo*,

that both items of clothing were removed simultaneously, we ▪ are nevertheless certain that the thefts occurred in quite different locales. Although both the third and fifth platoons were housed on an upper floor of the same barracks building, there is no sort of showing in the record of trial that the two organizations were quartered as a unit. In fact the reverse seems to have been the case, for testimony produced at the trial clearly established that each group occupied its own large room—an area divided into cubicles for sleeping purposes with wall lockers for storage of personal effects in the center. Moreover, the two squad rooms were situated at opposite ends of the structure, and were separated by a lengthy hallway variously estimated at from 30 to 75 yards long. When this evidence is considered—together with the accused's statement, which distinguished between the third and the fifth platoon areas expressly—we are sure that the Government has met fully its burden of establishing that the takings under scrutiny did not occur at substantially the same place.

Nor is the conclusion we have reached disturbed by the further defense contention that both thefts ▪ resulted from the same impulse—a desire on the part of the accused to replace clothing which he supposed had been stolen from him at an earlier time. We have had occasion in the recent past to consider an argument to the effect that, where there are several takings pursuant to a single design, no more than one larceny results. See United States v Stribling, 5 USCMA 531, 18 CMR 155. In that opinion we rejected such a view in the following language:

". . . Perhaps the present accused was indeed prompted by a unitary felonious purpose unbroken by recurrences of honesty. Nonetheless, the fact is insignificant here. '. . . the test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent.' Morgan v Devine, 237 US 632, 59 L ed 1153, 35 S Ct 712. See United States v. McVey, 4 USCMA 167, 15 CMR 167.

"Put in another fashion, 'although a continuous transaction may be involved—and one animated by but a single criminal intent—' separate acts may be proved resulting in convictions under more than one specification. United States v Beene, 4 USCMA 177, 15 CMR 177."

Accordingly—since we have found the Government's evidence to have shown that the acts of the accused were separate and distinct—his singleness of purpose enjoys no controlling significance.

V

From what has been said it follows that the decision of the board of review must be, and is hereby, affirmed.

Chief Judge QUINN and Judge LATIMER concur.