UNITED STATES, Appellee

v

DONN N. SWIGERT, Basic Airman, U. S. Air Force, Appellant

8 USCMA 468, 24 CMR 278

No. 9881

Decided December 13, 1957

*Captain Richard C. Bocken* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb*.

*Captain Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Robert W. Michels* and *Lieutenant Colonel Francis P. Murray*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried and convicted of housebreaking and larceny of $60, in violation of Articles 130 and 121, Uniform Code of Military Justice, 10 USC §§ 930 and 921, respectively. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for seven years. Clemency considerations caused the convening authority to reduce the sentence of confinement to three years. The board of review having affirmed, the accused comes before us alleging the following assignments of error which we permitted him to argue:

1. The evidence is insufficient to support the finding of guilty of the larceny of $60 under the charge.

2. The trial of the entire case by way of stipulation was prejudicial.

To facilitate an orderly approach to both questions, we will first consider the second error. It was stipulated by both parties that if the victim were present in court he would testify to the fact that when he left his room in the barracks on the morning of the theft, he had $60 in United States currency in his wallet. To secure his personal effects, he locked his door behind him with a padlock and hasp. Returning forty-five minutes later, he discovered that the hasp was broken and that $60 was missing from his wallet. Neither act was done with his permission.

It was further stipulated by the par-

**469**

ties that if the Office of Special Investigations investigator were present, he would testify that, subsequent to advising the accused of his rights and privileges under Article 31, 10 USC § 831, the accused admitted that, after seeing the victim leave the barracks, he shoved against the door until the latch broke, entered the room, and took twenty dollars from a wallet lying upon the table. He hid the twenty dollars and, after thinking about it, he returned to the room and removed the remaining forty dollars from the wallet and placed it with the original twenty dollars that he had hidden. The accused showed the investigator where he had secreted the money, and the sixty dollars was then given back to the victim.

We find no merit in this allegation of error. The stipulation of expected testimony has been exhaustingly discussed by this Court. In United States v Cambridge, 3 USCMA 377, 382, 12 CMR 133, Chief Judge Quinn, speaking for a unanimous Court, said:

"Stipulations of fact or testimony intended to avoid delay, trouble, or expense in the trial are well-recognized and accepted substitutes for other competent sources of proof or the direct testimony of witnesses. Ordinarily, statements made by defense counsel will bind the accused as effectively as though the accused himself had made them. This is particularly true if the statement is made by counsel in the progress of the trial and acquiesced in by the accused through his silence. Dick v United States, 40 F 2d 609 (CA 8th Cir) (1930). Consequently, in the absence of any special provisions applicable to trial by courts-martial, we hold, without hesitation, that an accused is bound by stipulations entered into by his counsel even though he did not personally and expressly join in them. 50 Am Jur, Stipulations, § 8 et seq.; 5 Am Jur, Attorneys, § 91. However, Appendix 8a, Manual, supra, provides that prior to the acceptance of a stipulation the law officer 'should determine that the accused joins' in it. In view of this provision, we are asked in the first

certified question whether 'as a matter of law . . . the personal assent of an accused is a necessary condition precedent to the acceptance and entry of a stipulation in addition to the consent of his counsel' in a court-martial."

This Court then went on to decide that:

"Defense counsel may properly stipulate to the whole or any part of the prosecution's case without the personal and express assent of the accused. . . .

"In this case not only did the accused have an opportunity to object to the stipulation at the time defense counsel accepted it, but he had a second chance when the law officer directed that the former testimony be read into evidence with 'the consent of the accused.' However, he did not object or in any way question the stipulation. The record incontrovertibly shows that the law officer had a sufficient and reasonable basis upon which to determine that the accused joined in the stipulation. And, that is all that is required by the Note, Appendix 8a."

In the instant case, the accused prior to trial signed the stipulation of the victim's testimony and in open court assented to the expected testimony of the Office of Special Investigations investigator. He, therefore, has no complaint unless his present insistence that he was inadequately represented at the trial has merit.

We find nothing in the record which suggests remotely that accused was ill-advised. The prosecution had in its hands a deposition wherein the victim testified to the theft of $60. Also, there was a pretrial confession signed by the accused which, while admitting the crime charged, presented other admissions which would have been extremely detrimental to the accused. By stipulating as he did, counsel kept much damaging evidence hidden from the eyes of the court-martial. One does not require the wisdom of Solomon to conclude that by this stratagem counsel placed the accused in the most favor-

able light which the evidence would allow.

We now consider the first error alleged. The accused contends that, although he was charged and convicted of one larceny of $60, the evidence in fact shows a commission of two separate petty offenses. By charging a theft of over $50, the court-martial could impose a punishment of five years' confinement, whereas the monetary value of the property stolen, if there were two separate larcenies, would only permit a maximum punishment of one year and six months.

The law in this area is well settled. If there are two takings under one continuous impulse, there is ▊ one larceny. As it is stated in Wharton, Criminal Law, 12th ed, § 1171:

"When two or more articles are taken successively, it is to be considered whether such taking is continuous, so as to form part ·of one transaction, to be indictable as such. And the answer is, if the transaction is set in motion by a single ·impulse, and operated upon by a single unintermittent force, it forms a continuous act, and hence must be treated as one larceny, not susceptible of being broken up in a series of offenses, no matter how long a time the act may occupy."

See also, 2 Bishop, Criminal Law, 9th ed, § 889; Clark and Marshall, Law of Crimes, 5th ed, § 337; Wharton, Criminal Pleading and Practice, 8th ed, § 470; 52 CJS, Larceny, §§ 53, 60d. A unanimous Court has discussed this point more than once. See United States v Hall, 6 USCMA 562, 20 CMR 278; United States v Taylor, 6 USCMA 289, 20 CMR 5; United States v Arrington, 5 USCMA 557, 18 CMR 181; United States v Stribling, 5 USCMA 531, 18 CMR 155; United States v Florence, 1 USCMA 620, 5 CMR 48. The reader who analyzes these cases will find the development herein expressed in conformity with the view which this Court has consistently held.

We have said "the question here involved is one of law and fact to be determined from the evidence in the record." United States v Florence, supra. Here the Government charged the theft of $60 as one larceny. From the testimony of the victim it is undeniable that the $60 owned by a single individual was stolen from one container, namely, a wallet, within a period of not more than forty-five minutes. From the testimony of the agent it is undisputed that the accused took the money, taking $20 the first time and returning immediately to take the remaining contents of the wallet.

Appellate defense counsel base their entire argument upon the fact that the Office of Special Investigations agent related that "The accused stated that when he took the $20 he left the room, placed the $20 under some plyboard. *After thinking about it,* he returned to the room, took the $40, which he had left in the wallet, placed it with the original $20 which he had taken." (Emphasis supplied.)

Counsel suggest that the emphasized words, even though they are mere recollection of hearsay and extremely generic, should be sufficient to rebut the theory of the Government that there was a single transaction. They cite United States v Florence, supra, as their authority. In that case we said:

"·. . . The Government argues that *'apparently* all the effects of the two deceased soldiers were turned over to petitioner at the same time.' (Emphasis supplied.) The manner in which this statement is phrased is indicative of the doubt which arises as to whether this factual situation can be found in the evidence. The record indicates that the personal effects of Alexander and Eagle were turned over to petitioner on March 12, 1951. It was on the following day, March 13, 1951, that Sergeant Pinson noted the discrepancies heretofore mentioned. *There is no evidence, either direct or circumstantial, that the petitioner pilfered these military payment certificates at substantially the same time.*" [Emphasis supplied.]

But in the instant case the only evi-

**471**

dence is that the crimes were committed at substantially the same time and the same place. From those facts it is natural and logical to infer that there was a single larceny. See United States v Stribling, supra; Rex v Jones, 4 Car & P 217, 172 Eng Rep 677 (N.P. 1830); Manual for Courts-Martial, United States, 1951, paragraph 200(a) 7.

Furthermore, when the transaction is viewed in its entirety, it is apparent that there was in fact a single impulse to steal. The accused saw the victim leave his room and lock the door. Right there and then the criminal intent was formulated, for the accused concluded to break down the door to gain entrance to the victim's room for the purpose of stealing money. The amount to be stolen was unknown to the accused, and when he rifled the wallet he found there were three twenty-dollar bills. He concluded to take one of the bills and leave two in the wallet, but that mental reflection was but a passing fancy for he returned forthwith to complete the task of stripping the wallet of all funds. The thinking process the accused refers to in his pretrial statement was only a minor part of his overall mental aberrations. Each thought is not isolated from its predecessor and the vacillations of the conscience are not divisible into separate and distinct offenses. Obviously we are not informed of the reasoning employed by the accused, but we are certain that there was no break in the mens rea from the beginning of this transaction to the end and before the alleged venture had ended, the total taken was $60. Even though during the commission of the crime the accused may have had conflicting urgings to take all or leave some of the money, his thinking crystalized into an intent to take all. Essentially we see nothing but a series of related acts building into a single offense of larceny.

Finally, we believe the following language in United States v Hall, supra, concerning the reverse situation can be applied properly in the case at bar:

"... But if the separative allegations of the Government—or its

actions in refusing to separate—are in fact fair, tenable and reasonably uniform, we shall not at all require a micrometer caliper for use in the disposition of cases of this ilk."

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

The accused entered a plea of not guilty of the offenses charged. The following evidence was presented to the court-martial:

(1) A stipulation of expected testimony of the victim of the offenses, joined in by the trial counsel, defense counsel, and the accused. The stipulation contained a detailed account of time and place and manner in which the room had been unlawfully entered, as well as a description of the subject matter of the larceny.

(2) An oral stipulation of expected testimony of an agent of the Office of Special Investigations, joined in by the trial counsel, defense counsel, and the accused. The stipulation related to the contents of an oral confession made by the accused to the agent in which he admitted having broken into the room and stolen the money.

The prosecution rested its case following the admission into evidence of these two stipulations. No evidence was presented on behalf of the accused. Neither side made a closing argument prior to findings. The court-martial deliberated just three minutes before returning its findings of guilty.

The defense counsel made a brief argument in extenuation and mitigation and then stipulated with the consent of the prosecution and the accused that if the stockade sergeant were present in court, he would testify that while in confinement the accused had been "a model prisoner." Evidence of one previous conviction was introduced. The court-martial, after a brief deliberation, returned a sentence of dishonorable discharge, total forfeitures, and confinement at hard labor for seven years.

I cannot believe that this was an adversary proceeding and that the procedures employed represent the trial of a criminal case. Paragraph 154b(1), Manual for Courts-Martial, United States, 1951, in discussing the use and admissibility of stipulations as to facts, states:

". . . A stipulation need not be accepted by the court and should not be accepted if any doubt exists as to the accused's understanding of what is involved. *If an accused has pleaded not guilty and the plea still stands, the court should not accept a stipulation which practically amounts to a confession.*" [Emphasis supplied.]

In my view this Manual provision states a good rule of evidence. Although the stipulations contained in the instant case were stipulations as to *testimony* rather than as to *facts,* paragraph 154b (2), Manual, supra, in discussing the former, provides that the "principles as to acceptance . . . of stipulations as to facts apply" except where liberalized by the court. I find it difficult to imagine a more flagrant violation of this provision than the instant case. The law officer admitted the stipulations in evidence without the slightest consideration of the fact that their admission was totally inconsistent with the accused's plea. It is true that on one occasion he inquired of the accused whether he understood the stipulation; however, this strikes me as a grossly inadequate substitute for a careful explanation to the accused of his rights and the effect of the use of such stipulated testimony. As for defense counsel's representation, it appears that his sole objective was to assist the trial counsel in prosecuting the case against the accused as expeditiously as possible. In such a setting, the accused's plea of not guilty amounted to no more than an empty and futile gesture. I would reverse the decision of the board of review and order a rehearing.