UNITED STATES, Appellant

v

PETER M. BURNEY, Staff Sergeant, U. S. Army, and MORRIS M. AIKEN, JR., Sergeant, U. S. Army, Appellees

21 USCMA 71, 44 CMR 125

■■■■■■■■■■■■■■■■

No. 23,957

August 27, 1971

■■■■■■■■■■■■■■■

*Captain Merle F. Wilberding* argued the cause for Appellant, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway,* and *Captain David E. Wilson.*

*Captain Richard A. Cooper* argued the cause for Appellees, Accused. With him on the brief were *Colonel George J. McCartin, Jr.,* and *Captain Norman L. Blumenfeld.*

## Opinion of the Court

DARDEN, Chief Judge:

The issue in this case is multiplicity. The record indicates the appellees left the 7th Medical Battalion motor pool, Camp Casey, Korea, on an unauthorized trip in a 2½-ton truck. They departed at 9:27 a.m., September 4, 1969, arriving at the compound of the 21st Rotation Royal Thai Company at Camp Kaiser at 10:45 a.m. After acquiring a load of field gear, they departed at 11:30 a.m., supposedly to effect an official turn-in, and were logged in at Camp Casey at 1:05 p.m.[1] They did not deliver the property they transported to the persons who should have received it for the United States Government. Appellees Burney and Aiken were convicted of both larceny of Army field gear worth several thousand dollars and wrongful appropriation of an Army truck used to transport the stolen clothing. Proof that the offenses occurred is unassailable. The appellees were given a sentence that included four and two years' confinement at hard labor, respectively. The Army Court of Military Review, holding the two convictions multiplicious for sentencing purposes, reduced the confinement part of the sentence to three years for Burney and one and one-half for Aiken but approved the remainder of each sentence: dishonorable discharge, total forfeitures, and reduction to the lowest enlisted grade. The Judge Advocate General of the Army certified the case for review of the determination by the Court of Military Review that wrongful appropriation of a *military* vehicle used to transport stolen Government property was not separately punishable from the larceny in that the acts were parts "of a single integrated transaction."

[1] The parties stipulated the average driving time between the two posts to be one hour and fifteen minutes.

The accused rely on United States v Weaver, 20 USCMA 58, 42 CMR 250 (1970); United States v Pearson, 19 USCMA 379, 41 CMR 379 (1970); United States v Murphy, 18 USCMA 571, 40 CMR 283 (1969); and United States v Payne, 12 USCMA 455, 31 CMR 41 (1961), for the premise that multiple offenses arising from a single integrated transaction and generated by a single impulse or intent are not separately punishable. They argue that the wrongful appropriation of the truck and subsequent larceny of field gear were in fact parts of such a single integrated transaction generated by a single impulse to commit the larceny.

That a person not be punished twice for the same offense is a fundamental principle. United States v Posnick, 8 USCMA 201, 24 CMR 11 (1957). The so-called tests developed in the case law of multiplicity are designed as indicators of whether the conduct in question constitutes separate offenses as charged or merely a single infraction. No one test is safe and accurate in all circumstances. But, given the common focus on the question of whether single or multiple punishment is appropriate, the various tests overlap.

If the tests appear to produce a conflict, we should reconsider whether one of the conflicting tests appropriately applies to the immediate factual situation. In this case, for example, the results of the separate-duties test of United States v Soukup, 2 USCMA 141, 7 CMR 17 (1953), a test appropriate for cowardly conduct and desertion situations, would not be accorded great weight, as it would not be meaningful to speak of a duty not to steal field gear. But in our view the test results do not conflict.

The Standard Manual[2] test for separateness that requires proof of

[2] Manual for Courts-Martial, United States, 1969 (Revised edition).

different elements is satisfied. The larceny specification requires proof of intent permanently to deprive the owner of the use and benefit of the property in question. The wrongful appropriation specification requires a showing of intent temporarily to appropriate the property to the accused's own use. Although both specifications alleged violations of Article 121, Uniform Code of Military Justice, 10 USC § 921, the wrongful appropriation of a truck is not a lesser included offense of the larceny of field gear. Just as clearly, the facts necessary to prove the wrongful appropriation are unnecessary to prove the larceny; the converse is also true. Application of the societal norms test of United States v Beene, 4 USCMA 177, 15 CMR 177 (1954), also suggests separability. Congress has sought to protect the security of property interests from permanent loss through theft and also to protect the Government from the harmful consequences of unauthorized borrowing of its equipment.

Probably the strongest argument for multiplicity is that the offenses charged and proved constituted a single integrated transaction generated by a single impulse. An understanding of the proper scope of the test counters the initial force of this contention, however. Although the phrase "single integrated transaction" may be used occasionally to supersede other tests in order to conform to the principles of punishment, it should not be used as a talisman to overcome more penetrating analysis when there are clearly two or more distinct criminal acts that arose out of essentially one overall transaction or course of conduct. Surely more than one offense is committed when, to secure money, a person robs a finance office, commandeers a getaway car, kidnaps a hostage or two, and causes personal injuries and property damage by reckless driving while attempting to evade capture.

We need not engage in legalistic hairsplitting, perhaps separating the basic motivation of a desire to profit

at the Government's expense into an intent to rob and an intent to avoid capture, in order to justify more than one sentence for the hypothesized conduct. Although in the instant case we could easily say that the appellees "obviously" had dual intents—to steal the field gear and to "borrow" the truck—we need not reject the proffered claim of unitary motivation in order to reject the claim of multiplicity. "[S]o long as there ▆▆▆▆ ▆ are separate offenses charged and found, regardless of the fact that they may arise out of the same transaction, sentence may be imposed for each offense." United States v Larney, 2 USCMA 563, 568, 10 CMR 61 (1953).

In finding multiplicity, the Court of Military Review relied on cases that reveal two separate emphases. United States v Pearson and United States v Weaver, both supra, stress the "single impulse" to escape confinement. On the other hand, United States v Payne and United States v Murphy, both supra, emphasize the integrated nature of the occurrences in those cases. Appellate defense counsel combine these separate approaches to produce the phrase "single integrated transaction and generated by a single impulse or intent." But the two are not identical. Because the circumstances of escape from confinement are unique, they require distinct treatment. Thus, the phrase "single integrated transaction" does not appear in either *Pearson* or *Weaver*, although the word "transaction" alone does. Unless the words "single" and "integrated" are surplusage, the two expressions are not equivalent. Where "single integrated transaction" is used, as in *Payne* and *Murphy*, certain common conditions are present.

In *Payne*, the accused were convicted, among other offenses, of two attempted larcenies for presenting the same false pay requests at two different finance offices. Generally a second attempt to commit a crime after the first has failed will be considered a separate offense. The perpetrator usually has the opportunity to reconsider the wisdom of his conduct. There was no such opportunity in *Payne*. The accused aroused suspicion at the first finance office and were directed to present their requests at a second office. They were driven there by air police called by the suspicious finance officer, who also notified the second office to prepare for their arrival.

The accused in *Murphy* was found guilty of larceny of some fragmentation vests and also of their immediate wrongful disposition to the foreign national who solicited the theft. Murphy could not have disposed of the vests without first having acquired them, and the wrongful disposition was the last act completing the larceny.

In addition to the insistent flow of events, allowing no time for reconsideration, present in both cases, the multiple convictions both had the same objects. The same pay requests were presented both times in *Payne*, and the same fragmentation vests were the object both of the larceny and the wrongful disposition charge in *Murphy*.

To qualify as a single integrated transaction for multiplicity purposes, a course of conduct re- ▆▆▆▆ ▆ sulting in criminal charges should have a similar combination of like object[3] and insistent flow of events.[4] Here the objects of

---

[3] In contrast to the situation at hand, this requirement was met in cases cited by the defense as additional support for their premise. United States v Kleinhans, 14 USCMA 496, 34 CMR 276 (1964) (unlawfully opening mail sack and larceny therefrom); United States v Dicario, 8 USCMA 353, 24 CMR 163 (1957) (tampering with certain letters and stealing monies therefrom); United States v Brown, 8 USCMA 18, 23 CMR 242 (1957) (larceny and wrongful disposition of a parka).

[4] The permissible time span, one element of the insistency of the flow, varies with the nature of the offenses and other factual circumstances. *Compare*

the two offenses were entirely separate —larceny was charged for the taking of the field gear, wrongful appropriation for the taking of the truck. In addition, the sequence of events was such that the appellees could have abandoned their plan to steal the field gear after they had succeeded in "borrowing" the truck. See United States v McClary, 10 USCMA 147, 27 CMR 221 (1959). Nothing prevented or otherwise inhibited them from reconsidering and adopting that alternative. And the record does not reveal the presence of any additional factors which would incline us toward leniency, as, for example, the gentle nature of the purely technical assault in United States v Pearson, supra. In short, we can find no compelling reason to justify an affirmance.

The decision of the Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for reconsideration of the sentence.

Judge QUINN concurs.

Senior Judge FERGUSON concurs in the result.

---

United States v Ompad, 15 USCMA 593, 36 CMR 91 (1966), with United States v Swigert, 8 USCMA 468, 24 CMR 278 (1957).