UNITED STATES

v.

**Airman Jack M. JOBES, FR
279–66–3997, United States
Air Force.**

**ACM S26599.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 Sept. 1984.

Decided 28 March 1985.

Appellate Counsel for the Accused: Colonel Leo L. Sergi.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel William H. Seckinger, USAFR.

Before RAICHLE, CANELLOS and CARPARELLI, Appellate Military Judges.

## DECISION

CARPARELLI, Judge:

Appellant was convicted, pursuant to his pleas, of wrongful appropriation of an automated bank teller card, theft of two hundred dollars and attempted theft of twenty dollars.[1] The evidence showed that appellant, without authority, took a plastic bank teller card from his roommate's wallet while the wallet was on top of the roommate's dresser in their barracks room. He then left the barracks and drove to the bank teller machine on the base. Using his roommate's card and the identification code, which he had discovered, he withdrew two hundred dollars from the roommate's savings account. He then immediately attempted to withdraw an additional twenty dollars from the same account. The machine, however, rejected the second transaction because it exceeded the two hundred dollar daily withdrawal limit. Later that evening the appellant surreptitiously returned the teller card to the victim's dresser.

Appellate defense counsel claim that the wrongful appropriation of the teller card is multiplicious with the theft of the two hundred dollars and the attempted theft of the twenty dollars. They argue that the wrongful appropriation of the teller card and its subsequent use flowed from a single impulse or intent and, therefore, cannot be separately punished. We find that all the specifications before us are separate for findings purposes. Contrary to appellant's assertion, we find that the theft of the teller card was separate for punishment purposes from the other offenses. Although the appellant has not argued that the theft of the two hundred dollars and the attempted theft of the twenty dollars were multiplicous for purposes of punishment, we find those specifications should have been treated as multiplicious for sentencing and that the military judge erred when he failed to so instruct the court. We now focus on the sentencing multiplicity issues.

### A. LEGISLATIVE INTENT

The Court of Military Appeals has emphasized that multiplicity issues turn on the determination of legislative intent. *United States v. Zubko*, 18 M.J. 378 (1984); *United States v. Timberlake*, 18 M.J. 371 (1984); *United States v. Rodriquez*, 18 M.J. 363 (1984); *United States v. Baker*, 14 M.J. 361 (1983). When resolving such issues, the court has followed an analytic hierarchy in which it first considers actual legislative intent. When the court has been unable to find such intent expressed or implied by the legislature, and has also been unable to reasonably infer such intent, it has sought to constructively identify legislative intent by applying uniform rules of construction. As regards sentencing, it has continued to recognize and apply the *Blockburger* rule, *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306, 309 (1932), and the Manual for Courts-Martial's "separate elements" rule of construction. *United*

1. The approved sentence included a bad conduct discharge, confinement for two months, forfeiture of one hundred dollars per month for two months, and reduction to airman basic.

*States v. Baker*, 14 M.J. at 369. Both rules provide, as a threshold matter, that offenses should not be considered to be multiplicious unless they arise from the same act or transaction.[2] This aspect of the rules may be viewed as either a necessary predicate to a finding of multiplicity or as a screen which eliminates some offenses from further consideration. The remaining aspect of the rules of construction requires consideration of whether the offenses in question require proof of different elements. To ensure proper operation of these rules, the Court of Military Appeals has also engaged in an auxiliary analysis which requires that the different elements reflect distinct social standards.

The specifications before us must be subjected to the same analytic hierarchy. In this regard, the Manual for Courts-Martial, 1984, contains an expression of "legislative intent," or, more accurately in this case, presidential intent, regarding the treatment of larceny offenses. Although the issue posed by appellate defense counsel pertains to a wrongful appropriation, a larceny, and an attempted larceny rather than to multiple larcenies, we believe that this provision of the Manual must, nevertheless, be applied. Paragraph 46*c* (1)(h)(ii) states:

"When a larceny of several articles is committed *at substantially the same time and place*, it is a single larceny even though the articles belong to different persons. Thus if a thief steals a suitcase containing the property of several persons or goes into a room and takes property belonging to various persons, there is but one larceny, which should be alleged in but one specification." [Emphasis added].

▆▆▆▆ The Manual thus requires that, when deciding whether multiple takings amount to a single larceny or multiple larcenies, courts must determine whether the offenses occurred "at substantially the same time and place." This is essentially the same as the threshold consideration posed by the rules of construction: whether the offenses "arise from the same act or transaction."[3] When determining the separateness of two or more larceny specifications, therefore, the pivotal consideration is not what was stolen, nor from whom it was stolen, but whether the thefts occurred "at substantially the same time and place;" or, in essence, whether they "arose from the same act or transaction." *See United States v. Hall*, 6 U.S.C.M.A. 562, 20 C.M.R. 278 (1955).

## B. ARISING FROM THE SAME ACT OR TRANSACTION

Human actions do not always have discrete beginnings and endings. Courts cannot, therefore, expect to discern definite and obvious separations between all criminal acts. Nevertheless, they must determine whether the law will treat a series of criminal acts as a single act or as separate acts. Although such a determination is necessarily inexact, it need not be arbitrary or entirely subjective.[4] Logic suggests that courts can look to factors such as time, distance, and the subject of the offenses. Such considerations, in fact, supported the court's decision in *United States v. Ompad*, 15 U.S.C.M.A. 593, 36 C.M.R. 91

---

2. The Manual's "separate elements" rule is now found in R.C.M. 1003(c)(1)(C). Although the text of the new rule deletes the threshold consideration of whether the offenses arise from the same act or transaction, *see* para. 76*a* (5), M.C.M., 1969 (Rev.), we believe such analysis is essential. The 1984 Manual's Discussion of the rule, in fact, includes such language.

3. The Manual's larceny rule also encompasses the separate elements facet of the rules of construction and the requirement that such elements reflect distinct social standards. Although it does not mention the need for distinct elements, it appears to presume that, in spite of differences regarding the item stolen, its owner, or its value, multiple larceny specifications require proof of essentially the same elements: (1) a wrongful taking, (2) lack of claim or title, (3) proof of value, and (4) a larcenous intent.

4. The Court of Military Appeals has said, "[I]f the separative allegations of the Government— or its actions in refusing to separate—are in fact fair, tenable and reasonably uniform, we shall not at all require a micrometer caliper for use in the disposition of cases of this ilk." *United States v. Hall*, 20 C.M.R. at 281.

(1966). In that case, the accused had assaulted his victim on the street, was briefly interrupted, and moments later confronted the same victim in the barracks and assaulted him again. The court found that, although the lapse of time was short and the distance between the two assaults was "very short," "the second assault was a new and separate act, not the continuation of a momentarily interrupted act." *Ompad,* 36 C.M.R. at 92.

In *United States v. Burney,* 21 U.S.C. M.A. 71, 44 C.M.R. 125 (1971), thieves obtained an Army truck from Camp Casey, Korea, at 0927 hours. They drove to Camp Kaiser, arriving there at 1045 hours. At Camp Kaiser they obtained a load of field gear, supposedly for the purpose of turning it in. They left Camp Kaiser at 1130 hours and arrived at Camp Casey at 1305 hours. They did not, however, deliver the field gear to any government authorities. As a result they were convicted for larceny of the field gear and wrongful appropriation of the Army truck and the offenses were treated as separately punishable. Although the Army Court of Military Review found the two convictions to be multiplicious for sentencing purposes, the Court of Military Appeals found the offenses were separate and overturned the decision of the Court of Review. The court, at 44 C.M.R. 128–129, stated:

> To qualify as a single integrated transaction for multiplicity purposes, a course of conduct resulting in criminal charges should have a similar combination of like object[3] and insistent flow of events.[4] Here the objects of the two offenses were entirely separate—larceny was charged for the taking of the field gear, wrongful appropriation for the taking of the truck. In addition, the sequence of events was such that the appellees could have abandoned their plan to steal the field gear after they had succeeded in "borrowing the truck." [Citation omitted]. Nothing prevented or otherwise

inhibited them from reconsidering and adopting that alternative.

3. In contrast to the situation at hand, this requirement was met in cases cited by the defense as additional support for their premise. *United States v. Kleinhans,* [citation *infra*] (unlawfully opening mail sack and larceny therefrom); *United States v. Dicario,* [citation *infra*] (tampering with certain letters and stealing monies therefrom); *United States v. Brown,* 8 U.S. C.M.A. 18, 23 C.M.R. 242 (1957) (larceny and wrongful appropriation of a parka).

4. The permissible time span, one element of the insistency of the flow, varies with the nature of the offenses and other factual circumstances.

Thus, in *Ompad, supra,* the court relied, in part, on the distance between the assaults as a measure of their separateness. The distance between criminal acts is the least abstract and most easily applied factor in the determination of sameness or separateness. It is, however, only one of the factors to be considered. As for the concept of "like object," it is essential to note that the court applied that concept in *Burney* as meaning "like subject" and not as "like objective" or "like motive." When the court applied the concept of "insistent flow of events," it spoke of a passage of time and circumstances which would have denied the offenders a reasonable opportunity to reflect and choose to refrain from committing additional criminal acts. The court chose to apply this concept rather than single impulse analysis, the theory on which the appellant's argument relies. In fact, contrary to appellant's argument, the court found no multiplicity even though both crimes were apparently motivated by a single desire to steal the field gear.

### 1. *Single Impulse Analysis*

■ What then is the role of single impulse analysis in the constructive determination of legislative intent? Unfortunately this question is not often asked. As a result, single impulse analysis may well be the most misunderstood and misapplied "test" of multiplicity. A clear understanding of the analysis is, at best, elusive.[5] In *United States v. Ridgeway,* 19

5. Indeed, it eluded us in our discussion in *United States v. Ridgeway,* 19 M.J. 681 (A.F.C.M.R.

1984). Application of single impulse analysis in a manner consistent with our conclusions here-

M.J. 681 (A.F.C.M.R.1984), we said that single impulse analysis is auxiliary to the application of constructive rules of legislative intent. We now believe it to be so elusive and subjective as to be of questionable value. At best, it may be useful only in larceny cases, and then only when applied, in conjunction with considerations of place, time, and "insistent flow of events," to determine whether the offenses arose from the same act or transaction.[6]

In *United States v. Stribling*, 5 U.S.C. M.A. 531, 18 C.M.R. 155 (1955), the Court of Military Appeals recognized that, when a theft of several articles is committed *at substantially the same time and place*, paragraph 200*a* of the 1951 Manual for Courts-Martial compelled them to hold that only a single crime had been committed.[7] Indeed, the court chose to apply this consideration rather than "single impulse" analysis. In doing so it expressly rejected the defense's position that "a single intent or design characterized by multiple takings must necessarily result in no more than one larceny." It explained that, even if the thief had been prompted by a single "felonious purpose unbroken by recurrences of honesty, *'the test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent.'*" *United States v. Stribling*, 18 C.M.R. at 157, [emphasis added], citing *Morgan v. Devine*, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915). The court held that, when a continuous transaction is involved and such transaction is animated by a single criminal intent, *"separate acts* may be proved resulting in convictions under more than one specification." *United States v. Stribling*, 18 C.M.R. at 157, [emphasis added]. *See United States v. Hall*, 6 U.S.C.M.A. 562, 20 C.M.R. 278 (1955); *United States v. Taylor*, 6 U.S.C.M.A. 289, 20 C.M.R. 5 (1955); *United States v. Florence*, 1 U.S.C.M.A. 620, 5 C.M.R. 48 (1952).

The Court of Military Appeals, however, has not confined its discussion of single impulse analysis to multiple larceny specifications. In *United States v. Kleinhans*, 14 U.S.C.M.A. 496, 34 C.M.R. 276 (1964), the case most frequently cited as authority for single impulse analysis,[8] the Court of Military Appeals was faced with one specification of unlawfully opening mail matter and one specification of larceny of currency from the same mail matter. After comparing the facts in *Kleinhans* with those in *United States v. Real*, 8 U.S.C.M.A. 644, 25 C.M.R. 148 (1958) and *United States v. Dicario*, 8 U.S.C.M.A. 353, 24 C.M.R. 163 (1957), the court concluded that *Kleinhans had committed a single act*. They also found that the act was motivated by a single impulse and that the two specifications, in essence, required proof of the same facts. Hence, the opening of the mail matter was factually included in the specification alleging the theft of currency from that mail matter. Thus, although single impulse analysis was a factor in the court's determination that the offenses arose from

in, however, would not have led to a different result in that case.

**6.** Unfortunately, military courts have, in many cases involving non-larceny specifications, misapplied single impulse analysis as a direct determinant of multiplicity. Our discussion herein, however, notes that single impulse analysis is a method of determining whether offenses arose from the same act or transaction. It is not, by itself, a proper method of determining whether offenses are multiplicious. When first applied in larceny cases, single impulse analysis properly led to findings of multiplicity only because multiple larceny specifications, by nature, do not require proof of separate and distinct elements. *See supra* note 3 and accompanying text. As to non-larceny specifications, however,

single impulse analysis can properly lead only to the intermediate conclusion that the offenses arose from the same act or transaction. That conclusion, in turn, requires application of the remaining aspects of the proper rule of construction. It is essential that military courts recognize this distinction.

**7.** Paragraph 200*a* (7) contained language identical to R.C.M. 46*c* (1)(h)(ii). The latter provision has been quoted in its entirety elsewhere in this decision.

**8.** *See, e.g., United States v. Baker*, 14 M.J. at 372 (Cook, J., dissenting), citing Analysis of Contents, Manual for Courts-Martial, United States 1969 (Revised edition), DA PAM 27–2.

a single act, the court's finding that the offenses required proof of the same facts was the crucial factor in the outcome of that case.

In these, and other early cases, single impulse analysis was originally used, together with considerations of time and location, as a method of determining whether *larceny* offenses arose from the same act or transaction, or, in the terms supplied by the Manual, whether they were committed at "substantially the same time and place." Essentially, the question was whether thefts of multiple items were part of a "single continuous taking" or constituted separate takings. *See United States v. Florence*, 5 C.M.R. at 54, citing Wharton, Criminal Law, 12th ed. Vol 2, § 1171, p. 1489.

More recently the Court of Military Appeals has noted that "[o]ffenses generated by a 'single impulse' do not necessarily demand a conclusion of singleness of punishment...." *United States v. Harrison*, 4 M.J. 332, 333 (C.M.A.1978). *See supra* note 5. As a result of our review of the applications of single impulse analysis, we have concluded that such analysis cannot properly be used, by itself, as a direct "test" of multiplicity.

## 2. *Insistent Flow of Events*

Earlier in this decision we stated that, in *United States v. Burney, supra*, the Court of Military Appeals chose to apply the concept of "insistent flow of events" rather than single impulse analysis. This was, in essence, a decision to rely on an objective standard rather than a subjective one. We believe the newer objective standard is a superior method of determining whether offenses arise from the same or separate acts or transactions.

Single impulse analysis embodies the proposition that an accused should only be punished once for a series of acts if those acts were committed pursuant to a "single impulse." [9] It thus requires a determination of the accused's subjective condition. There are, however, practical difficulties, if not impossibilities, in reliably determining whether an accused was acting under a single impulse or separate impulses. The only direct source of information is the accused himself. As a result, courts usually rely on circumstantial evidence. In fact, they rely on the same factors already discussed: time, place, and the subject of the offenses. These factors, in turn, can only lead to reasonable inferences regarding the question of whether the accused experienced only one uninterrupted "impulse" to commit the crime or, in fact, experienced an interruption of his criminal "impulse." In *Burney, supra*, the court apparently recognized these difficulties because, instead of applying single impulse analysis, it conspicuously elected, in its discussion of the concept of an "insistent flow of events," to adopt an objective standard. *See also United States v. Harrison, supra; United States v. Burney, supra; United States v. Kleinhans, supra;* United States v. Weaver, 18 U.S.C.M.A. 173, 39 C.M.R. 173 (1969); *United States v. Ompad, supra;* and *United States v. Hall, supra. But see United States v. Baker*, 14 M.J. at 370; Wharton's Criminal Law, 14th ed., §§ 358–359; and 52A C.J.S., §§ 53–54.[10]

The concept of an "insistent flow of events" reflects a policy that, even if an accused continued, over a period of time, to act pursuant to a single uninterrupted impetus, his actions should be considered as factually separate if time and circumstances gave him a reasonable opportunity to reflect and to choose to refrain from com-

**9.** The term "single impulse" has never been precisely defined. Hence trial and appellate courts have defined and applied it on an almost *ad hoc* basis. We understand the term to refer to a single uninterrupted impetus, be it emotional, spiritual, or mental.

**10.** We also question whether single impulse analysis can, by itself, serve as an effective constructive rule of legislative intent. In addition, we see a real danger that its use can undermine the operation of existing rules of construction and add unnecessary confusion to an already complex topic. It could, for example, be erroneously applied to suggest that multiple larcenies are multiplicious even when they occurred days apart.

**512**

mitting additional crimes. It thus establishes an objective standard which can be directly, reasonably and effectively determined on the basis of factors such as time, distance, and the nature of the offenses. We find this method of determining whether offenses arise from the same act or transaction to be far more reasonable and workable.

 We have thus concluded that, in cases of multiple larcenies (or offenses which are tantamount to multiple larcenies), when actual legislative intent cannot otherwise be identified, multiplicity issues should be resolved by application of paragraph 46c(1)(h)(ii), M.C.M., 1984. The provision in that paragraph which requires courts to determine whether the offenses were "committed at substantially the same time and place" should be viewed as equivalent to the phrase "arising from the same act or transaction" which is part of the *Blockburger* and Manual rules of construction. *Blockburger v. United States, supra;* R.C.M. 1003(c)(1)(C). *See* Discussion accompanying R.C.M. 1003(c)(1)(C). When making this determination, courts should look to the time of the offenses, the place or places at which they were committed, and whether the time and circumstances surrounding the offenses afforded the accused a reasonable opportunity to reflect on his actions and choose to refrain from committing additional crimes. In cases of multiple larcenies the conclusion that the offenses arose from the same act or transaction, by itself, is a sufficient basis for a finding of multiplicity. In non-larceny cases, however, such a conclusion compels analysis of whether the offenses require proof of separate elements which also reflect distinct social standards. In both larceny and non-larceny cases, a conclusion that offenses arose from *separate* acts or transactions is a sufficient basis for a finding that the offenses are not multiplicious.

### C. CONCLUSIONS

 As to the facts before us, we have applied paragraph 46c (1)(h)(ii) of the Manual. We find that the wrongful appropria-

tion of the teller card from the wallet in the barracks and the offenses at the bank were certainly committed at different places. Although the time between the barracks theft and the offenses at the bank was brief, the physical distance between the crimes, the time between them, and the circumstances existing during that time afforded the appellant a reasonable opportunity to reflect and to decide not to commit the offenses at the bank. *United States v. Burney, supra; United States v. Weaver, supra,* (housebreakings and ensuing larcenies and attempted larcenies not multiplicious); *United States v. Ompad, supra; United States v. Gibbons,* 11 U.S.C.M.A. 246, 29 C.M.R. 62 (1960), (holding larceny of checks, subsequent forgery of the same checks, and uttering of the checks on the same day as the forgery, were all separate offenses); *United States v. Gibson,* 3 U.S. C.M.A. 746, 14 C.M.R. 164 (1954), (housebreaking and ensuing larcenies not multiplicious); *United States v. Rigsby,* 6 M.J. 550 (A.F.C.M.R.1978), *pet. denied,* 6 M.J. 162, (larceny of checks and subsequent forgeries of the same checks not multiplicious); *United States v. Kirkle,* 50 C.M.R. 552 (A.F.C.M.R.1975), (forgery and larceny achieved by use of the forgery not multiplicious); *United States v. Haltiwanger,* 50 C.M.R. 255 (A.F.C.M.R.1975), (housebreaking with intent to commit larceny and ensuing larceny not multiplicious); and *United States v. Abendschein,* 19 M.J. 619 (A.C.M. R.1984), (theft of teller card and larcenies achieved by use of the card not multiplicious). There was thus no "insistent flow of events." Under these circumstances we find that the offenses were not committed at substantially the same time and place. On the contrary, we find that they arose from separate acts. We are not persuaded by the argument that, despite this opportunity to refrain from the offenses at the bank, the appellant was acting pursuant to a single enduring "impulse." *Cf. United States v. Murphy,* 18 U.S.C.M.A. 571, 40 C.M.R. 283 (1969); and *United States v. Payne,* 12 U.S.C.M.A. 455, 31 C.M.R. 41 (1961). We, therefore, find that, in accordance with the above referenced Manual

provision, the military judge was correct when he treated these offenses as separate for sentencing purposes.

 Appellant has not argued that the theft of the two hundred dollars and the attempted theft of the twenty dollars were multiplicious. Nevertheless, we have concluded that these two offenses were committed at substantially the same time and place and arose from the same transaction.[11] We, therefore, find that the military judge erred when he failed to treat the larceny from the savings account and the attempted larceny of an additional twenty dollars from the same account at the same time as multiplicious.

We recognize that another panel of this court arrived at a contrary result in *United States v. Pulliam,* 17 M.J. 1066 (A.F.C.M.R.1984), a case involving nearly identical facts. *But see United States v. Abendschein, supra.* In *Pulliam,* the court viewed theft of a teller card "as a preamble to the two ... larcenies." *United States v. Pulliam,* 17 M.J. at 1068. The court, in effect, found that the theft of the card was motivated by the desire to use it to steal money. We do not believe that larcenies which do not occur "at substantially the same time and place" should be treated as multiplicious solely because they are motivated by the same goal or are part of a larger plan. We note that in *Burney* the Court of Military Appeals found the wrongful appropriation of the truck and the larceny of the field gear to be separate even though the former offense was obviously motivated by the same desire which motivated the theft of the field gear. Similarly we note that in *United States v. Rigsby, supra,* and *United States v. Kirkle, supra,* this court found that larcenies, and forgeries which enabled the larcenies, were not multiplicious for sentencing purposes even though both offenses were obviously motivated by the same goal of stealing the money. The court, instead, found that the acts upon which the offenses were predi-

cated were separate acts. Hence, we decline to follow the holding in *Pulliam.*

Because we have found the larceny of the savings and the attempted larceny of the same savings to be multiplicious for sentencing purposes, we have reassessed the sentence. We have, however, found the approved sentence to be nonetheless appropriate. The findings and sentence are

AFFIRMED.

RAICHLE and CANELLOS, Senior Judges, concur.

---

**11.** We note, again, that the offenses in question are not both larcenies; one is an attempted larceny charged under Article 80, U.C.M.J., 10 U.S.C. § 880. Nevertheless, we find that paragraph 46c (1)(h)(ii), M.C.M., 1984, applies.