**UNITED STATES, Appellee,**

v.

**Private First Class David C. FINLAYSON, United States Army, Appellant.**

**ARMY 20010828.**

U.S. Army Court of Criminal Appeals.

30 June 2003.

912a [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority approved the adjudged sentence, but suspended confinement in excess of forty-eight months for forty-eight months.

This case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866. For the reasons stated below, we conclude that the conspiracy specifications (Specifications 1, 3, and 4 of Charge III) should be consolidated into a single specification, and that the findings, as consolidated, and the sentence should be affirmed.

For Appellant: Colonel Adele H. Odegard, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain Mary E. Card, JA (on brief).

For Appellee: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Jennifer H. McGee, JA; Captain Janine P. Felsman, JA (on brief).

Before HARVEY, Senior Judge, BARTO, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT

BARTO, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of conspiracy to possess and distribute ecstasy[1] (three specifications), absence without leave, possession of cocaine (one specification) and ecstasy (one specification), and use and distribution of ecstasy, in violation of Articles 81, 86, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, and

## FACTS

Appellant was assigned to Fort Stewart, Georgia. In connection with his guilty pleas, appellant admitted that he worked with a drug distributor in Savannah, Georgia, named Janessa Rothman. Appellant met Rothman through a mutual acquaintance, and she began to supply appellant with ecstasy pills on or about January 2001. Appellant would then distribute the ecstasy and return some of the profits to Rothman. Shortly thereafter, appellant began to travel to Florida with and for Rothman to obtain ecstasy from her supplier, Mike Heron. On occasion, appellant would obtain ecstasy from Heron on behalf of Rothman and deliver it to her in Savannah, while at other times, Rothman would perform the same service for appellant. By March, 2001, appellant stopped buying from Rothman and began to obtain ecstasy directly from Heron in Florida. In May, 2001, appellant received 2,400 ecstasy pills from Heron, distributed one-half of them to Rothman, and arranged for distribution of the remainder through other dealers.

1. "Ecstasy" is a commonly used name for 3,4–Methylenedioxymethamphetamine, a substance that is used for its combination of hallucinogenic and stimulant effects. *See DEA [Drug Enforcement Administration] Briefs & Background, Drugs and Drug Abuse, Drug Descriptions, at* http://www.usdoj.gov/dea/concern/mdma/mdma 020700.htm. It has been a Schedule I controlled substance under federal law since 1988. *See* Schedules of Controlled Substances; Scheduling of 3,4–Methylenedioxymethamphetamine (MDMA) Into Schedule I of the Controlled Substances Act; Remand, 53 Fed.Reg. 5,156 (Feb. 22, 1988) (codified as amended at 21 C.F.R. § 1308.11 (1988)). *See generally United States v. Reichenbach*, 29 M.J. 128 (C.M.A.1989) (discussing placement of ecstasy on Schedule I).

Appellant also stipulated at trial that he and "his wife, Eva Finlayson, had talked about making extra money by selling ecstasy for a long time. After Eva Finlayson returned from Bosnia, the two of them agreed to put this plan in action by purchasing, possessing, and distributing ecstasy." During the plea inquiry, appellant described his wife as his business "partner." She consented to using funds from their joint bank account to obtain ecstasy, allowed appellant to use her car to travel to Florida to obtain ecstasy, accompanied him on at least one trip to Florida to obtain ecstasy from Heron, and shared in the proceeds from appellant's distribution of ecstasy.

Appellant was eventually charged with participating in three separate conspiracies to possess and distribute ecstasy arising out of these facts. Specification 1 of Charge III alleged that appellant conspired with his wife; Specification 3 of the same charge alleged that appellant conspired with Rothman; while Specification 4 alleged that appellant conspired with Heron. Each specification alleged that possession and distribution of ecstasy were the objectives of the conspiracy, and each alleged the purchase and distribution of ecstasy by appellant as the overt act necessary to establish the conspiracy. The pleadings also asserted that each conspiracy lasted from on or about 1 June 2000 until 29 June 2001, and that each took place in Hinesville, Georgia.

At trial, defense counsel asked the court to consolidate the three specifications on the basis that there was actually only one conspiracy between appellant, his wife, Rothman, and Heron. The military judge denied the defense motion, but nevertheless agreed to consider the three offenses to be "one offense for sentencing purposes." Appellant ultimately pleaded guilty to the three conspiracy specifications by exceptions and substitutions, shortening the duration of his conspiracy with Rothman and Heron to January 2001 until June 2001, and that with his wife to March 2001 until June 2001. The military judge entered findings consistent with appellant's pleas.

## LAW

Article 81, UCMJ, provides that "[a]ny person subject to this chapter who conspires with any other person to commit an offense under this chapter shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court-martial may direct." The elements of the offense are as follows:

(1) That the accused entered into an agreement with one or more persons to commit an offense under the code; and

(2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.

*Manual for Courts–Martial, United States* (2000 ed.) [hereinafter *MCM*, 2000], Part IV, para. 5b.

In sum, "conspiracy is a partnership in crime." *Pinkerton v. United States,* 328 U.S. 640, 644, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The essence of a conspiracy is in the "agreement or confederation to commit a crime, and that is what is punishable as a conspiracy, if any overt act is taken in pursuit of it." *United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); *see Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942). As such, it is ordinarily the agreement that forms the unit of prosecution for conspiracy, "even if it contemplates the commission of several offenses." ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 683 (3rd ed.1982) (citing *Braverman,* 317 U.S. at 53, 63 S.Ct. 99); *see United States v. Pereira,* 53 M.J. 183, 184 (C.A.A.F.2000) (finding single conspiracy to commit murder, robbery, and kidnapping); *cf. United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221 & n. 3, 73 S.Ct. 227, 97 L.Ed. 260 (1952) (introducing concept of "unit of prosecution").

■ However, "[i]t is a recurring question in conspiracy cases whether related illegal agreements comprise one conspiracy or several." *United States v. Randazzo,* 80 F.3d 623, 629 (1st Cir.1996); *e.g., Pereira,* 53 M.J. at 184; *United States v. Thompson,* 21 M.J. 94 (C.M.A.1985) (summary disposition).

Whether a single conspiracy or multiple conspiracies existed in a given circumstance is a question of fact determined by reference to the totality of the circumstances. *See United States v. Fields*, 72 F.3d 1200, 1210 (5th Cir.1996); 16 AM. JUR. 2D *Conspiracy* § 11 (2002).[2] As the United States Supreme Court noted long ago, "the character and effect of a conspiracy [are] not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Patten*, 226 U.S. 525, 544, 33 S.Ct. 141, 57 L.Ed. 333 (1913).

■ Military precedent has not further explicated this method of analysis, but federal decisions have identified a variety of factors that may be relevant to such a determination.[3] Among such factors are the following: (1) the objectives and (2) nature of the scheme in each alleged conspiracy; (3) the nature of the charge and (4) the overt acts alleged in each; (5) the time and (6) location of each of the alleged conspiracies; (7) the conspiratorial participants in each; and (8) the degree of interdependence between the alleged conspiracies. We conclude that a "totality of the circumstances" analysis is the correct approach when determining the number of conspiracies in a given case. We will apply this analysis in our *de novo* review of the factual findings of this court-martial. *See Ryder v. United States*, 515 U.S. 177, 187, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995).

## DISCUSSION

■ Applying these factors to this case, we make the following findings and conclusions.

(1) *Objectives:* The common goal of all co-conspirators was to derive personal gain from the illicit buying and selling of ecstasy.

(2) *Nature of the scheme:* Heron distributed ecstasy through a network of subsidiary distributors like Rothman and appellant.

"Where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or the overall success of the venture-that is, where there are several parts inherent in a larger common plan-the existence of a single conspiracy will be inferred." *Fields*, 72 F.3d at 1210.

(3) *Nature of the charge:* All three conspiracy specifications allege conspiracy to possess and distribute ecstasy in violation of Article 112a, UCMJ.

(4) *Overt acts:* All three conspiracy specifications allege as the requisite overt acts that appellant purchased and distributed ecstasy.

(5) *Time:* Pursuant to his pleas, the military judge found appellant guilty of conspiring with Heron and Rothman from *January* 2001 until June 2001, and with his wife from *March* 2001 until June 2001. However, "[t]he joining of another conspirator after the conspiracy has been established does not create a new conspiracy or affect the status of the other conspirators." *MCM*, 2000, Part IV, para. 5c(1). "One who joins a conspiracy after its formation is equally culpable with the original members, and is responsible for all that has previously been done pursuant to the conspiracy." 16 AM. JUR. 2D *Conspiracy* § 20 (note omitted); *see MCM*, 2000, Part IV, para. 5c(1). Because appellant continued to purchase and distribute ecstasy after his wife joined in the conspiracy with him, she may be criminally responsible for the conspiracy begun by her co-conspirators *before* she joined it. *See MCM*, 2000, Part IV, para. 5c(1). As such, the difference in the duration of the purportedly separate conspiracies in the findings of the military judge is legally insignificant.

(6) *Location:* All three specifications allege that appellant conspired "in Hinesville, Georgia," but the record indicates that Roth-

---

2. *See also Braverman*, 317 U.S. at 53, 63 S.Ct. 99 ("[T]he precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects."), *cited with approval in United States v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

3. *See, e.g., Fields*, 72 F.3d at 1210 (three-factor analysis); *United States v. Liotard*, 817 F.2d 1074, 1078 (3rd Cir.1987) (four-factor analysis); *United States v. Korfant*, 771 F.2d 660, 662 (2nd Cir.1985) (eight-factor analysis); *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir.1985) (five-factor analysis).

man lived in Savannah, Georgia, and Heron lived in Miami, Florida.

(7) *Participants* & (8) *Interdependence:* There was substantial interdependence between the allegedly distinct conspiracies, and there was significant overlap of participants: Heron supplied Rothman with ecstasy for subsequent redistribution; Heron supplied appellant with ecstasy for redistribution to Rothman; and Heron and Rothman supplied ecstasy to appellant and his wife for subsequent redistribution and their personal use. Even after he began to receive ecstasy directly from Heron in March of 2001, appellant continued to distribute ecstasy he obtained from Heron to Rothman.

Conspiracy is an "elastic, sprawling and pervasive offense" whose "history exemplifies the 'tendency of a principle to expand itself to the limits of its logic.'" *Krulewitch v. United States,* 336 U.S. 440, 445, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring in the judgment and opinion of the court) (quoting Benjamin N. Cardozo, The Nature of the Judicial Process 51 (1921), *in* THE STORRS LECTURES DELIVERED AT YALE UNIVERSITY (1921)). As Justice Jackson observed, "loose practice as to this offense constitutes a serious threat to fairness in our administration of justice." *Id.* at 446, 69 S.Ct. 716. That being said, we are aware that the parameters of a criminal partnership will not always be easy to discern at the time of the charging decision; the accuser will seldom have all the facts at preferral that are necessary to discern whether there is one conspiracy or more. Our superior court has observed in a related context, "if the separative allegations of the Government-or its actions in refusing to separate-are in fact fair, tenable and reasonably uni-

form, we shall not at all require a micrometer caliper for use in the disposition of cases of this ilk." *United States v. Hall,* 6 U.S.C.M.A. 562, 564–65, 20 C.M.R. 278, 280–81, 1955 WL 3565 (1955). We would not even need "a micrometer caliper" to make these determinations if the pleadings in these cases included sufficient facts to distinguish separate conspiracies from one another, such as differing locations, durations, objectives, or overt acts. Even in a guilty plea setting, trial counsel can include facts sufficient to establish separate conspiracies in a stipulation of fact, request that the military judge clarify the matter during the providence inquiry, or introduce other evidence establishing multiple conspiracies. *See Pereira,* 53 M.J. at 184.

In any event, justice is not served by a charging decision that knowingly exaggerates appellant's criminality or unreasonably increases his punitive exposure. *See United States v. Quiroz,* 55 M.J. 334, 338 (C.A.A.F. 2001). An accuser should not unreasonably multiply the charges arising out of a single criminal combination. *See id.* at 336–38; Rule for Courts–Martial 307(c)(4) discussion. Staff judge advocates and military judges should "ensure that imaginative prosecutors do not needlessly 'pile on' charges against a military accused." *United States v. Foster,* 40 M.J. 140, 144 n. 4 (C.M.A.1994).[4] Toward that end, practitioners would do well to recall that "the unlawful agreement satisfies the definition of the crime [of conspiracy], but it does not exhaust it." *United States v. Kissel,* 218 U.S. 601, 607, 31 S.Ct. 124, 54 L.Ed. 1168 (1910). As Justice Holmes noted, "it is a perversion of natural thought and of natural language to call such continuous cooperation a cinematographic series of distinct con-

---

4. The American Bar Association's criminal justice standards for the prosecution function are generally applicable to court-martial practice, *see* Army Reg. 27–10, Legal Services: Military Justice, para. 5–8.c (6 Sept. 2002), and provide that a "prosecutor should not bring or seek charges greater in number or degree than can reasonably be supported with evidence at trial or than are necessary to fairly reflect the gravity of the offense." *Criminal Justice Section Standards,* 1993 A.B.A. CRIM JUST. SEC. ¶ 3–3.9(f), http://www.abanet.org/crimjust/standards/pfunc_blk.html# 3.9. Similarly, the Principles of Federal Prosecution contained in the UNITED STATES ATTORNEYS' MANUAL

authorize multiple charges arising out of a single criminal transaction in only two circumstances: (1) when necessary to adequately reflect the nature and extent of the criminal conduct involved *and* to provide the basis for an adequate sentence under all the circumstances of the case, or (2) when such charging will significantly enhance the strength of the government's case. UNITED STATES ATTORNEYS' MANUAL tit. 9, at ¶ 9–27.320 (Aug.2002), http:/ /www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html. Either standard will provide a starting point for the military justice supervisor seeking to overwatch the charging decision.

spiracies, rather than to call it a single one." *Id.*

Under the circumstances of this case, we therefore find that there was but one conspiracy to which Heron, Rothman, appellant, and his wife were parties. As such, we conclude that the military judge erred when he found that there were three separate conspiracies. Notwithstanding appellant's unconditional pleas of guilty to the three conspiracy specifications,[5] we will consolidate these specifications into a single conspiracy specification in our decretal paragraph and reassess the sentence.

■ In reassessing the sentence, we note that appellant conspired with two civilians to possess and distribute ecstasy in Hinesville, Georgia. He enlisted the financial and personal support of his wife and fellow soldier in this criminal partnership, as well. The scheme involved interstate travel to obtain and transport ecstasy, lasted almost six months, and resulted in the distribution of thousands of ecstasy tablets in the vicinity of Fort Stewart. Appellant and his wife earned at least $25,000 from the sale of ecstasy during the period from January 2001 until June 2001. Appellant used hundreds of tablets of ecstasy himself, and fled his unit to avoid deploying to Kosovo. We also note that appellant was sentenced by a military judge who considered the criminal partnership between appellant and his co-conspirators to be one offense for sentencing purposes and calculated the maximum punishment accordingly. Finally, the convening authority suspended six years of appellant's approved ten-year sentence to confinement for forty-eight months. In sum, we are satisfied that appellant suffered no prejudice as to his sentence.

We have considered the assignments of error and the matters personally submitted by appellant pursuant to *United States v.*

*Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

## DECISION

Specifications 1, 3, and 4 of Charge III are consolidated into a single specification, numbered Specification 1 of Charge III, to read as follows:

In that Private First Class (PFC) David C. Finlayson, U.S. Army, did, in Hinesville, Georgia, between on or about 1 January 2001 and 29 June 2001, conspire with Eva Nicole Finlayson, Janessa Caron Rothman, and Mike Heron to commit offenses under the Uniform Code of Military Justice, to wit: possess and distribute ecstasy, a Schedule I controlled substance, and in order to effect the object of the conspiracy the said PFC David Finlayson did purchase from Janessa Rothman and Mike Heron approximately 100 pills of ecstasy and 1000 pills of ecstasy, respectively, and did thereafter distribute approximately 200 pills of ecstasy a week.

The finding of guilty of Specification 1 of Charge III, as so amended, is affirmed. The findings of guilty of Specifications 3 and 4 of Charge III are set aside, and Specifications 3 and 4 of Charge III are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, and applying the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms the sentence.

Senior Judge HARVEY and Judge SCHENCK concur.

---

**5.** In *United States v. Broce,* 488 U.S. 563, 571, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), the Supreme Court concluded that "[w]hen respondents pleaded guilty to two charges of conspiracy on the explicit premise of two agreements which started at different times and embraced separate objectives, they conceded guilt to two separate offenses." Some assert this language in support of the proposition that a guilty plea waives appel-

late review of whether appellant has been improperly convicted of multiple conspiracies. *See, e.g., Pereira,* 53 M.J. at 186 (Crawford, C.J., dissenting). Such is not the case here where the findings are largely duplicative on their face and we may evaluate the issue on appeal by reference to the existing record. *See Broce,* 488 U.S. at 576, 109 S.Ct. 757.