# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant DAVID J. MALLAR, JR.**
**United States Army, Appellant**

ARMY 20130523

Headquarters, Fort Bliss
Timothy P. Hayes, Military Judge (arraignment)
David L. Conn, Military Judge (trial)
Colonel Edward K. Lawson IV, Staff Judge Advocate

For Appellant: Major Vincent T. Shuler, JA; Captain Patrick A. Crocker, JA (on brief); Lieutenant Colonel Peter Kageleiry, Jr., JA; Major Vincent T. Shuler, JA; Captain Patrick A. Crocker, JA (on brief on specified issues).

For Appellee: Lieutenant Colonel James L. Varley, JA (on brief); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain T. Campbell Warner, JA (on brief on specified issues).

30 April 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of conspiracy to commit murder, one specification of conspiracy to violate a lawful general regulation, one specification of violating a lawful general regulation, and two specifications of communicating a threat, in violation of Articles 81, 92, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, and 934 [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for ten years, and

reduction to the grade of E-1.  The convening authority approved the sentence as adjudged.[1]

This case is before us for review pursuant to Article 66, UCMJ.  Appellant submitted a merits pleading to this court and also raised two issues personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  We find the issues raised personally by appellant to be without merit.

This court subsequently specified two issues that warranted additional review. The first issue is whether the two conspiracies to commit murder constitute but one ongoing conspiracy and therefore constitute an unreasonable multiplication of charges.  The second issue is whether the specification alleging a conspiracy to violate a lawful general regulation constitutes an unreasonable multiplication of charges, in that appellant was also charged with the underlying offense (wrongfully organizing and operating an extremist organization) that already required concerted criminal activity to commit.  We find both specified issues warrant comment and relief.

## BACKGROUND

In October 2011, appellant established, organized and led an extremist organization in El Paso, Texas.  The organization, dubbed the "20th Infantry," was a stand-alone militia composed of approximately fourteen members, both military and civilian.  From its inception, the ideological purpose of the 20th Infantry was to protect the U.S.-Mexico border against drug cartel members and traffickers through the use of deadly force, as they believed the United States government was not doing an adequate job of protecting the border.  Specifically, the group's aim was to kill and rob Mexican drug cartel members and drug traffickers.

Appellant organized the group like a military unit, with appellant as its "commander."  Appellant organized meetings, training events, fundraising efforts, and the procurement of weapons and equipment for use by the organization.  The members wore uniforms, carried weapons, and had a rank structure and specific job designations.

Appellant held numerous meetings and training events and communicated with group members on a regular basis to propagate his message and discuss ways to accomplish their stated goals.  A training program was set up to allow members to earn a 20th Infantry patch and rise within the ranks of the group after successfully completing various training tasks.  Specialist (SPC) MM was the group's "executive officer" in charge of training and marksmanship.

---

[1] The convening authority waived automatic forfeitures for a period of six months.

In July 2012, under appellant's leadership of the appellant, Specialist MM, SPC KH, and three other members of the group (including civilian MVM) conducted an armed surveillance mission at the U.S.-Mexico border for the purpose of identifying ambush positions to which the group could later return to kill and rob drug cartel members and drug traffickers by shooting them. While the group was conducting the reconnaissance, the U.S. Border Patrol detained the group and questioned them about their activities. After giving a cover story that they were hunting rabbits, the Border Patrol released the militia members the following day.

Undeterred by their detention, the group continued to meet, train, and discuss ways to accomplish its goals. In September 2012, appellant conducted another surveillance mission with MVM at the LaQuinta Inn, in El Paso, Texas. Appellant believed drug traffickers frequented the hotel and could be ambushed and killed either at the hotel or in route to their "safe house." During the hotel visit, appellant reviewed ingress and egress routes with MVM and discussed the means by which they could execute an ambush. The next day, appellant discussed ambush methods at the LaQuinta Inn with MMH, another member of 20th Infantry militia.

Eventually, the group's plan to kill and rob Mexican drug cartel members and drug traffickers was uncovered by law enforcement when a friend of appellant reported his activities to the authorities. The government charged appellant, *inter alia*, with two specifications of conspiracy to commit murder of unknown and unnamed drug traffickers and dealers[2] by means of shooting them with a firearm, and one specification of conspiracy to violate Army Regulation (AR) 600-20 by wrongfully organizing and operating an extremist organization. Army Reg. 600-20, Army Command Policy, para. 4-12 (Extremist Organizations and Activities) (18 Mar. 2008) (RAR, 27 Apr. 2010). The government also charged appellant with the actual violation of AR 600-20, by organizing and operating an extremist organization.

## LAW AND DISCUSSION

### *Ongoing Conspiracy*

Whether two alleged conspiracy offenses constitute one actual conspiracy is a question of law we review *de novo*. *See United States v. Finlayson*, 58 M.J. 824, 827 (Army Ct. Crim. App. 2003).

---

[2] In the first specification pertaining to the conspiracy to commit premeditated murder, the charging language refers only to "unnamed drug traffickers." The second specification pertaining to this objective refers to "unnamed drug traffickers and drug dealers." Any concerns over this minor distinction are alleviated by the relief provided in our decretal paragraph.

Article 81, UCMJ, provides that "[a]ny person subject to this chapter who conspires with any other person to commit an offense under this chapter shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court-martial may direct." The elements of the offense are as follows:

> 1) That the accused entered into an agreement with one or more persons to commit an offense under the code; and
>
> 2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.

*Manual for Courts-Martial, United States* (2012 ed.), pt. IV, ¶ 5.b.

"A conspiracy is a partnership in crime." *Pinkerton v. United States*, 328 U.S. 640, 644 (1946). The essence of a conspiracy is in the "agreement or confederation to commit a crime, and that is what is punishable as a conspiracy, if any overt act is taken in pursuit of it." *United States v. Bayer*, 331 U.S. 532, 542 (1947); *see also United States v. Braverman*, 317 U.S. 49, 53 (1942).

> When the activities of alleged co-conspirators are interdependent or mutually supportive of a common or single goal, a single conspiracy will be inferred. Thus, if the agreement contemplates the bringing to pass of a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up, and there is such continuous cooperation, there is a single conspiracy rather than a series of distinct conspiracies.

16 Am. Jur. 2d *Conspiracy* § 11 (2014) (footnotes omitted). "As such, it is ordinarily the agreement that forms the unit of prosecution for conspiracy, 'even if it contemplates the commission of several offenses.'" *Finlayson,* 58 M.J. at 826 (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 683 (3rd ed. 1982)); *see also United States v. Pereira,* 53 M.J. 183, 184-85 (C.A.A.F. 2000) (finding single conspiracy to commit murder, robbery, and kidnapping).

The Supreme Court has instructed that "the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Patten*, 226 U.S. 525, 544 (1913). A variety of factors may be relevant in determining the number of conspiracies including: the common goal; nature of the scheme in each alleged

conspiracy; overlapping participants in various dealings; the overt acts alleged in each; and the time and location of each conspiracy. *See Finlayson*, 58 M.J. at 827.

In appellant's case, the record demonstrates that there was but one common agreement and goal among the members of the 20th Infantry militia—to commit murder of Mexican drug cartel members, traffickers, and dealers. The members of the group trained to accomplish this stated goal and sought ways to hide their criminal enterprise from law enforcement. Each alleged conspiracy to murder involved conducting surveillance at locations where drug cartel members or traffickers might be found for the purpose of later killing them at or near El Paso, Texas. The two occasions of surveillance, first on the U.S.-Mexico border and then at the LaQuinta Inn in El Paso, were but two different overt acts in furtherance of the same common aim. The surveillance missions were not compartmentalized and there was an overlap of participants. MVM was involved in each of the overt acts, and thus was already part of the existing conspiracy on the date of the second conspiracy to commit murder offense. Therefore, under the totality of circumstances in this case, we find but one ongoing conspiracy.

We will therefore consolidate specifications 1 and 2 of Charge II into one conspiracy to commit murder.

*Unreasonable Multiplication of Charges*

In Specification 3 of Charge I, appellant was charged with conspiring to fail to obey a lawful general regulation, by "wrongfully organizing and operating an extremist organization" which he effected by "conduct[ing] meetings and training events on divers occasions between on or about 1 October 2011 and on or about 1 February 2012." In the Specification of Charge III, appellant was charged with "fail[ing] to obey a lawful general regulation . . . by wrongfully organizing and operating an extremist organization" between on or about 1 February 2012 and on or about 22 October 2012.

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts–Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

> 1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;

5

2) Is each charge and specification aimed at distinctly separate criminal acts?;

3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and

5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338–39 (internal quotation marks omitted).

Application of the *Quiroz* factors in this case balances in favor of appellant and requires a finding of unreasonable multiplication of charges for findings. Appellant stands convicted of both failure to obey a lawful general regulation by violating Army Regulation 600-20 by organizing and operating an extremist organization, and conspiracy to violate the very same lawful general regulation by organizing and operating an extremist organization. Although no objection to this charging scheme was made at trial, nor was appellant's punitive exposure increased as he was facing potential imprisonment for life regardless, the two separate charges exaggerate his criminality by penalizing the same act two ways. Each charged offense is aimed at precisely the same criminal activity. The agreement that attends each individual offense addresses the same threat to society that each law seeks to avert concerted criminal activity. *See Iannelli v. United States*, 420 U.S. 770 (1975).

The Supreme Court repeatedly has recognized that a "conspiracy poses distinct dangers quite apart from those of the [underlying] substantive offense" that is the object of the conspiracy. The *Iannelli* Court reemphasized that:

'This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement partnership in crime-presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a

6

> conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.'

*Id.* at 778 (quoting *Callanan v. United States*, 364 U.S. 587, 593-94 (1961). "The basic rationale of the law of conspiracy is that a conspiracy may be an evil in itself, independently of any other evil it seeks to accomplish." *Dennis v. United States*, 341 U.S. 494, 573 (1951) (Jackson, J., concurring opinion). Similarly, the regulatory prohibition against extremist organizations addresses the same societal dangers of concerted criminal activity.

In a sense, the nature of the regulatory violation of organizing and under these circumstances operating an extremist group requires a conspiracy or, at a minimum, a meeting of the minds. Therefore, appellant should not be convicted or punished twice for a single act which posed a singular danger and threat. As such, we find appellant's conviction for conspiracy to violate the regulation constituted an unreasonable multiplication of charges with the separate charge for his violation of the regulation itself pursuant to Article 92, UCMJ.

## CONCLUSION

Specifications 1 and 2 of Charge II are consolidated into a single specification, numbered Specification 1 of Charge II, to read as follows:

> In that SSG David J. Mallar, did, between on or about 1 February 2012 and on or about 22 September 2012, at or near El Paso, Texas, and at or near McNary, Texas, conspire with Specialist MM, Specialist KH and MVM to commit an offense under the Uniform Code of Military Justice, to wit: murder of unknown and unnamed drug traffickers and drug dealers by means of shooting them with a firearm, and in order to effect the object of the conspiracy, the said SSG Mallar did conduct surveillance missions on the U.S.-Mexican border at or near El Paso, Texas on or about 16 July 2012 and at LaQuinta Inn at or near El Paso, Texas, on or about 22 September 2012.

The finding of guilty of Specification 1 of Charge II, as so amended, is AFFIRMED. The finding of guilty to Specification 2 of Charge II is set aside and that specification is DISMISSED. Additionally, the finding of guilty to

7

Specification 3 of Charge II is set aside and that specification DISMISSED. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure that might cause us pause in reassessing appellant's sentence. Our consolidation of Specifications 1 and 2 of Charge II and dismissal of Specifications 2 and 3 of Charge II does not affect appellant's punishment exposure which remains a dishonorable discharge, confinement for life without the possibility of parole, reduction to the grade of E-1, and total forfeitures. Second, appellant was tried and sentenced by a military judge. Third, we find the nature of the remaining offenses still captures the gravamen of the original offenses and the aggravating circumstances surrounding appellant's conduct remains admissible and relevant to the remaining offenses. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

Reassessing the sentence based on the noted errors, we AFFIRM the approved sentence. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court