# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist KEVIN S. HOSKINS**
**United States Army, Appellant**

ARMY 20130451

Headquarters, Fort Bliss
Timothy P. Hayes, Jr., Military Judge
Colonel Edward K. Lawson IV, Staff Judge Advocate

For Appellant:  Major Amy E. Nieman, JA; Captain Robert H. Meek, III, JA.

For Appellee:  Lieutenant Colonel James L. Varley, JA.

2 June 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of conspiracy to commit murder, conspiracy to violate a lawful general regulation, conspiracy to commit robbery, and one specification of violating a lawful general regulation in violation of Articles 81 and 92 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 892 [hereinafter UCMJ].[1]  The military judge sentenced appellant to a bad-conduct discharge and confinement for seven years. Consistent with the pretrial agreement, the convening authority approved a bad-conduct discharge and confinement for sixty months.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant submitted a merits pleading to this court and personally raised issues pursuant to

---

[1] After entry of pleas but before findings, the military judge granted the unopposed motion of the trial counsel to dismiss The Specification of Charge I, attempted murder, in violation of Article 80, UCMJ.

*United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We find two issues personally raised by appellant warrant discussion and relief. We find the remaining issues to be without merit.

## BACKGROUND

In April 2012, appellant joined an "extremist organization" in El Paso, Texas.[2] The organization, dubbed the "20th Infantry," was composed of approximately fourteen members, both military and civilian.[3] The group was organized like a military unit. The members wore uniforms, carried weapons, and had a rank structure and specific job designations. The primary aim of the organization was "killing and robbing drug traffickers, spreading extremist views about and conducting surveillance on Muslims, and taking over functions of the United States by means of force, if necessary."

Appellant attended group meetings and training events beginning in April 2012. The training included use of firearms, squad movement techniques, and detention operations. On one occasion, appellant taught the group a class on using hand and arm signals. Appellant testified that he was not aware of the primary aims of the group until 16 July 2012.

On 16 July 2012, appellant and five other group members conducted a surveillance mission on the U.S./Mexico border near El Paso, Texas to look for suitable areas to ambush, rob, and kill drug dealers. Before the men started walking the area, appellant heard the group's leader, Staff Sergeant D.M., say that if they ran into drug traffickers while conducting the surveillance mission, they would "take them out." Appellant now understood this to mean that the group would kill drug traffickers they encountered. Staff Sergeant D.M., also stated that if they encountered drug traffickers, they would "not leave [the drug traffickers] stuff there . . . ." Appellant understood this to mean that the group would steal the possessions and money of those drug traffickers they encountered. While the group was conducting the surveillance, the U.S. Border Patrol detained the group and questioned them about their activities. After the members gave a cover story that they were hunting rabbits, the Border Patrol released the group members.

---

[2] Army Reg. 600-20, Army Command Policy, para. 4-12 (Extremist Organizations and Activities) (18 Mar. 2008) (RAR, 27 Apr. 2010) prohibits participation in extremist organizations that "advocate racial, gender or ethnic hatred or intolerance; advocate, create, or engage in illegal discrimination based on race, color, gender, religion, national origin, or advocate the use of force or violence or unlawful means to deprive individuals of their rights under the United States Constitution or the laws of the United States, or any State, by unlawful means."

[3] Among the 20th Infantry's other members also on active duty in the United States Army were the group's leader, Staff Sergeant D.M., and its executive officer, Specialist M.M.

On 19 July 2012, appellant met with members of the group to participate in an after action review of the surveillance event that was conducted on 16 July.  During August and September 2012, now understanding the full scope of the group's aims and intentions, appellant attended two additional group meetings before being questioned by law enforcement.

On 1 October 2012, appellant was interviewed by Federal Bureau of Investigation (FBI) agents.  The information appellant provided the FBI was consistent with the aforementioned facts.[4]

Appellant was charged with and pleaded guilty to conspiracy to commit murder, conspiracy to commit robbery, conspiracy to violate Army Regulation (AR) 600-20 by wrongfully participating in an extremist organization, and violating AR 600-20, by participating in an extremist organization.

## LAW AND DISCUSSION

*Number of Conspiracies*

Whether two or more alleged conspiracy offenses constitute one actual conspiracy is a question of law we review *de novo*.  *See United States v. Finlayson*, 58 M.J. 824, 827 (Army Ct. Crim. App. 2003).

Article 81, UCMJ, provides that "[a]ny person subject to this chapter who conspires with any other person to commit an offense under this chapter shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court-martial may direct."  The elements of the offense are as follows:

> 1) That the accused entered into an agreement with one or more  persons to commit an offense under the code; and
>
> 2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.

*Manual for Courts-Martial, United States* (2012 ed.), pt. IV, ¶ 5.b.

"A conspiracy is a partnership in crime."  *Pinkerton v. United States*, 328 U.S. 640, 644 (1946).  A single agreement to commit multiple offenses ordinarily constitutes a single conspiracy.  *See Braverman v. United States,* 317 U.S. 49 (1942).  As the Supreme Court stated in *Braverman,* "[O]ne agreement cannot be taken to be several agreements and hence several conspiracies because it envisages

---

[4] Appellant's statement to the FBI was entered into evidence as an enclosure to the stipulation of fact in this case.

the violation of several statutes rather than one." *Id.* at 53. This is because the critical aspect of the offense of conspiracy is the agreement, not the object of the conspiracy. *Id.* at 53–54. "As such, it is ordinarily the agreement that forms the unit of prosecution for conspiracy, 'even if it contemplates the commission of several offenses.'" *Finlayson,* 58 M.J. at 826 (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 683 (3rd ed. 1982)); *see also United States v. Pereira,* 53 M.J. 183, 184-85 (C.A.A.F. 2000) (finding single conspiracy to commit murder, robbery, and kidnapping).

The Supreme Court has instructed that "the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Patten*, 226 U.S. 525, 544 (1913). A variety of factors may be relevant in determining the number of conspiracies including: the common goal, nature of the scheme in each alleged conspiracy, overlapping participants in various dealings, the overt acts alleged in each, and the time and location of each alleged conspiracy. *See Finlayson*, 58 M.J. at 827-28.

In *United States v. Reliford*, the predecessor to our superior court consolidated two conspiracy specifications, one to commit murder and one to commit robbery, where the record demonstrated that "there was one agreement between appellant and his co-actors to commit murder and robbery. . . . [because] [i]n such situations there is one conspiracy." 27 M.J. 176 (C.M.A. 1988) (summ. disp.).

Similarly, in appellant's case, the record demonstrates there was one agreement between appellant and his co-conspirators to commit murder and robbery of unknown and unnamed drug traffickers, and this conspiracy was accompanied by the same overt act—the act being surveillance operations on the U.S./Mexico border on 16 July 2012. Under the circumstances of this case, there is only one conspiracy.

We therefore conclude that Specifications 1 and 3 of Charge II should be consolidated to allege a single conspiracy to commit murder and robbery.

We further find the evidence in this case establishes that appellant did not enter this conspiracy until 16 July 2012. It was not until the surveillance operation that appellant became aware of the group's criminal intentions and agreed to continue to be a part of the agreement. We, therefore, will also amend the dates of this merged conspiracy to match the evidence in the record of trial.

*Unreasonable Multiplication of Charges*

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts–Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching

in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338–39 (internal quotation marks omitted).

Applying the *Quiroz* factors to the facts of this case, we determine that charging conspiracy to participate in an organization and participation in that same organization is an unreasonable multiplication of charges for findings. Appellant stands needlessly convicted of both offenses. Although appellant made no objection to this charging scheme at trial, the two separate charges exaggerate his criminality by penalizing the same act two ways. Each charged offense is aimed at the same criminal activity. The "agreement" that attends each offense is criminalized because of the same desire to avert the danger to society of concerted criminal activity. *See Iannelli v. United States*, 420 U.S. 770 (1975).

The Supreme Court repeatedly has recognized that a "conspiracy poses distinct dangers quite apart from those of the [underlying] substantive offense" that is the object of the conspiracy. *Id.* at 778. The *Iannelli* Court reemphasized that:

> 'This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement-partnership in crime-presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for

5

> criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.'

*Id.* (quoting *Callanan v. United States*, 364 U.S. 587, 593-594 (1961). "The basic rationale of the law of conspiracy is that a conspiracy may be an evil in itself, independently of any other evil it seeks to accomplish." *Dennis v. United States*, 341 U.S. 494, 573 (1951) (Jackson, J., concurring opinion). Similarly, the regulatory prohibition against participation in extremist organizations addresses the same societal danger of concerted criminal activity.

Appellant's agreement to participate and his actual participation in the extremist organization represent the same act and could not logically occur without the same meeting of the minds of those participants within the organization. Therefore, in our view, appellant should not be convicted of or punished twice for a single act which posed the same danger and threat to society. Accordingly, we find appellant's conviction for conspiracy to violate the regulation constitutes an unreasonable multiplication of charges with the separate charge and conviction for his violation of the regulation itself pursuant to Article 92, UCMJ. We will therefore dismiss Specification 2 of Charge II, conspiracy to violate the regulation.

We further find, regarding the Article 92, UCMJ, offense, that the offense began on 16 July 2012, contemporaneous with appellant's knowledge of the nature of the group's activities. We, therefore, also amend the date of that specification to comport with the evidence in the record of trial.

## CONCLUSION

The finding of guilty to Specification 2 of Charge II is set aside and that specification is DISMISSED.

Specifications 1 and 3 of Charge II are consolidated into a single specification, numbered the Specification of Charge II, to read as follows:

> In that Specialist Kevin S. Hoskins, U.S. Army, did, on or about 16 July 2012, conspire with Staff Sergeant D.M. and Specialist M.M. to commit offenses under the Uniform Code of Military Justice, to wit: murder of unknown and unnamed drug traffickers by means of shooting them with a firearm, and steal by means of force and violence with a

6

firearm, from unknown and unnamed persons, against their will, drugs and money, of some value, the property of those persons, and in order to effect the object of the conspiracy, the said Specialist Kevin S. Hoskins did conduct a surveillance operation with firearms on the U.S./Mexico border at or near El Paso, Texas on or about 16 July 2012.

The Specification of Charge III is amended to read as follows:

In that Specialist Kevin S. Hoskins did, at or near El Paso, Texas between on or about 16 July 2012 and on or about 22 October 2012, fail to obey a lawful general regulation, to wit: paragraph 4-12, Army Regulation 600-20, dated 18 March 2008, Rapid Action Revision Issue Date 27 April 2010, by wrongfully participating in an extremist organization.

The findings of guilty, as amended, are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence. Second, appellant was tried and sentenced by a military judge. Third, we find the nature of the remaining offenses still captures the gravamen of the original offenses and the aggravating circumstances surrounding appellant's conduct remains admissible and relevant to the remaining offenses. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial. We are confident that based on the entire record and appellant's course of conduct, the military judge sitting alone as a general court-martial, would have imposed a sentence of at least four years of confinement and a bad-conduct discharge.

Reassessing the sentence based on the noted error and the remaining findings of guilty, we AFFIRM a sentence of a bad-conduct discharge and confinement for four years. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by our decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

7

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court