# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class TRAVIS W. LOWRY**
**United States Army, Appellant**

ARMY 20120966

Headquarters, III Corps and Fort Hood
James L. Varley, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Major Yolanda McCray Jones, JA; Captain Payum Doroodium, JA (on brief).

For Appellee:  Major A. G. Courie, III, JA; Major Steven J. Collins, JA; Captain Anne C. Hsieh, JA (on brief).

28 September 2015

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curium:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of conspiracy, one specification of false official statement, one specification of sale of military property, one specification of aggravated sexual assault, one specification of indecent conduct, one specification of larceny of military property, and one specification of assault consummated by battery in violation of Articles 81, 107, 108, 120, 121, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 908, 920, 921 and 928 (2006) [hereinafter UCMJ].  The military judge sentenced appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged and credited appellant with forty-eight days of confinement credit.

LOWRY—ARMY 20120966

This case is before us for review under Article 66, UCMJ.  Appellate counsel assigned two errors to this court, and appellant personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  Both assigned errors warrant discussion and relief.  Those matters raised pursuant to *Grostefon* are without merit.

## BACKGROUND

Between 1 January 2008 and 1 April 2010, appellant and Staff Sergeant (SSG) Sean Adams, members of the same military police platoon, entered into an agreement to steal property, sell it, and split the proceeds.  Appellant and SSG Adams rendezvoused at a motor pool on Fort Hood while on duty during a night shift.  They entered an unsecured building in search of portable "higher value" items, and found a full pallet of advanced combat optical gunsights (ACOG) and machine gun optical sights (M145).  They stole a total of twelve ACOGs and two M145s.  When asked why they took a relatively small amount, SSG Adams testified: "We didn't want to take so much . . . to cause an investigation to start, and also we wanted it quick and efficient.  So we only took what we could carry out once and left."  They loaded the scopes in their respective patrol vehicles, left the motor pool, and met at a different location to consolidate the military property to be sold.

SSG Adams testified as follows about his agreement with several fellow military policeman, including appellant:

> [Trial counsel]:  And what would you do---If you and a co-conspirator stole equipment together and then you sold it to [M.B.], what would you do with the money afterwards?
>
> [SSG Adams]:  Once the items were sold and I was paid from [M.B.] for the items, then I'd split the money evenly amongst whoever was involved, sir.
>
> [Trial counsel]:  Was this your understanding of what would happen this night when you both took the [twelve] ACOGs and the [two] M-145's?
>
> [SSG Adams]:  Yes, sir.
>
> . . . .
>
> [Trial counsel]:  What is your understanding of any agreement between both of you as to what would happen

2

to those items since they ended up in your personal
vehicle?

[SSG Adams]:  That I would take them to [M.B.], sell, and
then I would get the money and split it 50/50.

[Trial counsel]:  Did you end up selling those items?

[SSG Adams]:  Yes, sir.

Appellant and SSG Adams kept one ACOG each and, as agreed, SSG Adams
sold the remaining ACOGs and M145s to M.B., a civilian who owned an off-post
surplus business.  Staff Sergeant Adams gave appellant his share of the money from
the sale.  Sometime later, appellant decided to sell the ACOG he kept for himself.
He gave it to SSG Adams, who sold it to M.B. along with the ACOG SSG Adams
initially kept for himself.  Again, they split the money from the sale evenly.

## LAW AND DISCUSSION

### a. Conspiracy

The military judge found appellant guilty of two specifications of conspiracy
under Article 81, UCMJ:  Specification 2 of Charge I for agreeing with SSG Adams
to commit larceny with the overt act of entering a motor pool, while on duty as a
military police officer, and stealing property of some value, and Specification 3 of
Charge I for agreeing with SSG Adams to sell military property with the overt act of
selling military property, the items they stole from the motor pool, to M.B..

A conspiracy exists when one "enters into an agreement with" another and
"performs an overt act for the purpose of bringing about the object of the
conspiracy."  *Manual for Courts-Martial, United States* (2008 ed.), Part IV, ¶ 5.b.
As we explained in an earlier decision:

> Whether a single conspiracy or multiple conspiracies
> existed in a given circumstance is a question of fact
> determined by reference to the totality of the
> circumstances. *See United States v. Fields*, 72 F.3d 1200,
> 1210 (5th Cir. 1996); 16 AM. JUR. 2D *Conspiracy* § 11
> (2002).  As the United States Supreme Court noted long
> ago, "the character and effect of a conspiracy [are] not to
> be judged by dismembering it and viewing its separate
> parts, but only by looking at it as a whole." *United States
> v. Patten*, 226 U.S. 525, 544 (1913).

*United States v. Finlayson,* 58 M.J. 824, 826-27 (Army Ct. Crim. App. 2003). The factors used to determine the number of conspiracies include: "(1) the objectives and (2) nature of the scheme in each alleged conspiracy; (3) the nature of the charge and (4) the overt acts alleged in each; (5) the time and (6) location of each of the alleged conspiracies; (7) the conspiratorial participants in each; and (8) the degree of interdependence between the alleged conspiracies." *Id.* at 827.

After weighing these factors, we conclude appellant and his co-conspirator engaged in a single conspiracy to commit two offenses: Stealing property of some value, and selling the military property they stole. While the two charged conspiracies have different overt acts associated with them, and SSG Adams sold the stolen optical scopes in two transactions with M.B., the objective of the conspiracy was the same during the entire string of misconduct – to make money from the military property they stole at the motor pool. Under the circumstances, the evidence does not support the second sale of optical scopes to M.B. resulted from a separate, distinct conspiracy between appellant and SSG Adams. Accordingly, we consolidate appellant's two conspiracy convictions in the decretal paragraph.

### b. Dilatory Post-Trial Processing

Appellant requests relief to remedy the dilatory post-trial processing of his case. We agree. The record in this case consists of five volumes, and the trial transcript is 546 pages. The convening authority took action 516 days after the sentence was adjudged, including 133 days to sign the Staff Judge Advocate Recommendation. Although we find no due process violation in the post-trial processing of appellant's case, we must still review the appropriateness of the sentence in light of the unjustified dilatory post-trial processing. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."); *see generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000).

The government explains there was a backlog of "cases pending or in the process of transcription and authentication" at Fort Hood, and the five court reporters responsible for processing this case were subject to "deployments, retirements, and other personnel turnover." Despite this explanation, we find relief in this case is appropriate because the delay between announcement of sentence and action could "adversely affect the public's perception of the fairness and integrity of military justice system . . . ." *Ney*, 68 M.J. at 617. We provide relief in our decretal paragraph.

**CONCLUSION**

After consideration of the entire record, Specifications 2 and 3 of Charge I are consolidated into a single specification, numbered Specification 2 of Charge I, to read as follows:

> In that [appellant], U.S. Army, did, at or near Fort Hood, Texas between on or about 1 January 2008 and 1 April 2010, conspire with SSG Sean Adams to commit offenses under the Uniform Code of Military Justice, to wit:  Larceny and Sale of Military Property, and in order to effect the objects of the conspiracy the said [appellant] and SSG Sean Adams did enter a motor pool on Fort Hood, Texas, while on duty as military policemen, and steal property of some value, and did sell military property of some value to [M.B.].

The finding of guilty of Specification 2 of Charge I, as so amended, is AFFIRMED. The finding of guilty of Specification 3 of Charge I is set aside and DISMISSED. The remaining findings of guilty are AFFIRMED.

Given the dilatory post-trial processing, however, we affirm only so much of the sentence as extends to a dishonorable discharge, confinement for seventy months, forfeiture of all pay and allowances, and reduction to the grade of E-2.[*]  All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside and dismissed by this decision, are ordered restored.  *See* UCMJ arts. 58b(c), and 75(a).

---

[*] Following the announcement of sentence, defense counsel raised the issue of credit in accordance with *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989).  Prior to his conviction at trial for assault consummated by battery (The Specification of Charge VI), appellant was reduced from E-4 to E-3 under Article 15, UCMJ for the same misconduct.  Under *Pierce*, the military judge specified the court's adjudged punishment to reduction to E-1 "must be mitigated by the Convening Authority to no punishment below the rank of E-2."  The staff judge advocate's recommendation and addendum both recommended approval of "reduction to the grade of Private (E2)" and 48 days of confinement credit, but the action and the promulgating order do not include a reduction to E-2 as part of the approved sentence.  We address this omission here, considering automatic reduction to E-1 by operation of Article 58a(a), UCMJ was effective on the date of the action.

LOWRY—ARMY 20120966



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court